**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

DEREK D. HARRELL,

               Petitioner,

v.

KATHLEEN ALLISON, Secretary,

               Respondent.

Case No.:  3:21-cv-0255-RBM-AHG

**ORDER: (1) DENYING REQUEST FOR EVIDENTIARY HEARING**

**(2) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND**

**(3) DENYING CERTIFICATE OF APPEALABILITY**

## I.    INTRODUCTION

Derek D. Harrell ("Harrell" or "Petitioner"), a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet."), challenging his San Diego Superior Court conviction in case number SCD272905. (*See* Pet., ECF No. 1 at 1.)[1] The Court has reviewed the Petition, the

---

[1] Page numbers for the Petition, Answer, Memorandum of Points and Authorities in Support of the Answer and Traverse cited in this Order refer to those imprinted by the court's electronic case filing system.

Answer and Memorandum of Points and Authorities in Support of the Answer (ECF Nos. 10, 10-1), the lodgments, the Traverse (ECF No. 17) and all the supporting documents submitted by both parties. For the reasons discussed below, the Court denies Petitioner's request for an evidentiary hearing, denies the Petition and declines to issue a certificate of appealability.

## II.    FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35–36 (1992) (holding findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness). The California Court of Appeal summarized the facts as follows:

A.    The Stabbing

During the summer of 2017, Harrell was homeless and made a living selling drugs and giving haircuts to people on the street. In June 2017, he approached the 60-year-old victim, with whom he was not previously acquainted, and offered to give him a haircut or sell him a set of hair clippers. The victim declined the offer, but Harrell and the victim became acquaintances and occasionally spent time together at the victim's apartment.

The acquaintanceship between Harrell and the victim was short-lived. In July 2017, Harrell brought clothing to the victim's apartment and the clothing went missing. Harrell believed the victim took the clothing, repeatedly telephoned the victim about the clothing, and left voice messages demanding the return of the clothing. He also showed up at the victim's apartment several times screaming obscenities, blaming the victim for stealing the clothing, and threatening violence. One evening after Harrell's clothing went missing, a rock was thrown through the window of the victim's upper-story apartment.

Soon after, Harrell and the victim got into a violent confrontation near the victim's apartment. The victim was intoxicated and later tested positive for methamphetamine, cocaine, and opiates. Harrell and the victim provided

2

differing accounts about the confrontation, with each blaming the other as the main aggressor. However, it is undisputed Harrell stabbed the unarmed victim several times during the confrontation. As a result of the stabbing, the victim suffered severe knife wounds on his neck and abdomen.

### B.    Prosecution Case

By amended information, Harrell was charged with one count of attempted murder and one count of assault with a deadly weapon. The amended information further alleged Harrell inflicted great bodily injury on the victim, used a deadly or dangerous weapon during commission of the offenses, and suffered four prior prison terms.

At trial, the primary disputed issues were whether Harrell instigated the confrontation and whether he reasonably acted in self-defense. The prosecution elicited testimony pertinent to these issues from two witnesses—the victim and a witness who drove by the victim's apartment building at or near the time of the confrontation. [Footnote 2 omitted.]

The victim testified he first encountered Harrell on the evening in question when he exited his apartment building and observed Harrell riding a bicycle. The victim testified Harrell screamed, "Man, where my clothes at? You know, you know, you got my shit. Where my stuff at?" The victim testified he replied that Harrell needed to "get some help" and returned inside the apartment building. The victim testified he encountered Harrell a second time a few hours later, at approximately 8:30 p.m., when he exited the apartment building to socialize with neighbors. The victim testified Harrell was still riding a bicycle and was "going off" about his missing clothing. The victim testified he responded, "Stop bothering. Just go and get some help."

According to the victim, the confrontation occurred a few hours after the second encounter. He testified he exited the apartment building to smoke a cigarette and, although he usually carried a cane to walk distances, he did not have a cane with him. The victim testified he finished his cigarette and faced the apartment building to unlock the door, at which point Harrell approached him from behind. The victim testified he turned around and tried to restrain Harrell; however, Harrell pulled out a knife and repeatedly stabbed him. The victim initially testified he did not recall whether he and Harrell remained in front of the apartment building door during the confrontation. However, he later testified he "mov[ed] away" from the

apartment building door during the struggle and, at some point, ran into the street. The victim testified he escaped the confrontation by retreating into the apartment building and calling 911.

The prosecution also elicited testimony from a witness who drove by the victim's apartment building. The witness testified he had a work shift from 4:00 p.m. to midnight and drove by the building on his lunch break, which he believed he took at 9:00 or 9:30 p.m. He testified he was waiting for a red light to change at an intersection near the victim's apartment building when he heard a loud noise and yelling. He observed two men who appeared to be in an argument. According to the witness, one man had a bicycle and was situated on the sidewalk a block from the victim's apartment building and the second man was older, standing in the street, and "squaring off" with his fists raised. The witness testified the men were eight to 10 feet apart and the older man stepped toward the other man, but he did not see physical contact between them.

C.    Defense Case

The defense elicited testimony from one witness regarding the circumstances of the confrontation—Harrell. He testified he first observed the victim at "news time" (or "five o'clock") on the evening of the confrontation. He testified he witnessed the victim buy a bottle of alcohol from a female at a bus stop near his apartment building.

Harrell testified he encountered the victim a second time at "ten something" p.m. He testified he was standing with his bicycle at an intersection about a block from the victim's apartment building when the victim approached and pinned him and his bicycle against a gate. Harrell testified the victim used his elbow to push against Harrell's throat and used his knee to push the bicycle and Harrell into the gate. According to Harrell, the victim was intoxicated and had a "crazy look in his face." Harrell testified he threw a beer can at the victim to try to stop him, but the victim did not relent. Harrell testified a knife fell from his pocket, which he picked up and swung to ward off the victim. Harrell testified he "absolutely" needed to defend himself with the knife and was trying to "get some space" between himself and the victim. Harrell testified the victim ultimately "backed up" and Harrell grabbed his bicycle and "got away."

Resp't Lodgment No. 5, Cal. Ct. App. Opinion, ECF No. 11-28 at 3–7.

///

### III.   PROCEDURAL BACKGROUND

On October 2, 2017, and amended felony complaint was filed against Harrell, charging him with one count of attempted murder (Cal. Penal Code §§ 187(a); 664) and one count of assault with a deadly weapon (Cal. Penal Code. § 245(a)). Resp't Lodgment No. 1, Clerk's Tr., ECF No. 11-1 at 17–18. It was further alleged that Harrell personally used a deadly weapon (Cal. Penal Code § 12022(b)(1)) and inflicted great bodily injury (Cal. Penal. Code 12011.7(a)). Clerk's Tr., ECF No. 11-1 at 19. Finally, it was alleged that Harrell had suffered four prison priors for driving under the influence (Cal. Penal Code §667.5(b)(1)). Clerk's Tr., ECF No. 11-1 at 20–22.

Following a jury trial, Harrell was found guilty of attempted voluntary manslaughter[2] and assault with a deadly weapon. Clerk's Tr., ECF No. 11-6 at 554–56, 559. The jury also found true the allegations that Petitioner used a deadly weapon and inflicted great bodily injury on the victim. *Id.* at 553–56. On June 15, 20218, the trial court sentenced Harrell to 11 years in prison.[3] *Id.* at 481.

Harrell appealed his conviction to the California Court of Appeal. Clerk's Tr., ECF No. 11-5 at 484. On appeal, Harrell argued: (1) the evidence was insufficient to support his conviction; (2) the trial court improperly instructed the jury, in violation of his due process and Sixth Amendment rights; (3) the trial court required an extra bailiff to be posted near Harrell while he testified in violation of his right to a fair trial; (4) the prosecutor committed several instances of misconduct, in violation of his due process rights; (5) the trial court committed judicial misconduct in violation of his right to a fair trial; and (6) the cumulative effect of numerous trial errors amounted to a violation of due

---

[2] The jury found Harrell not guilty of attempted murder. Clerk's Tr., ECF No. 11-6 at 558.

[3] The trial court sentenced Harrell to three years on count one, plus a three-year enhancement for causing great bodily injury and a one-year enhancement for personal use of a deadly weapon, and four one-year enhancements for each of his four prison priors. Clerk's Tr., ECF No. 11-5 at 487. The court stayed the sentence on count two. *Id.*

process. *See* Resp't Lodgment No. 3, Appellant's Opening Br., ECF No. 11-26 at 45–123. On February 6, 2020, the appellate court reversed the trial court's prison prior findings and remanded the case for resentencing. Ct. App. Opinion, ECF No. 11-28 at 38. The appellate court affirmed the judgment in all other respects. *See id.*

Appellate counsel for Harrell attempted to file a petition for review of the appellate court's decision with the California Supreme Court. *See* Resp't Lodgment No. 7, Pet. for Rev., ECF No. 11-30. Counsel, however, submitted the petition one day past the filing deadline and the petition was rejected and returned unfiled. *See* Resp't Lodgment No. 8, Letter Rej. Pet., ECF No. 11-31. Appellate counsel then filed an application for relief from default which was denied on March 23, 2020. *See id.* On April 20, 2020, Harrell filed a petition for writ of habeas corpus with the California Supreme Court, raising the same six claims presented to the Court of Appeal and adding a claim of ineffective assistance of appellate counsel arising out of the failure to file a timely petition for review. *See* Resp't Lodgment No. 8, Cal. Sup. Ct. Pet., ECF No. 11-32 at 3–22. On July 29, 2020, the California Supreme Court denied the petition without comment or citation. *See* Resp't Lodgment No. 10, Cal. Sup. Ct. Docket, ECF No. 11-33. On February 2, 2021, Harrell was resentenced on remand to seven years in prison. Resp't Lodgment No. 6, Abstract of Judgment, ECF No. 11-29 at 1.

Harrell filed the instant federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 9, 2021. Pet., ECF No. 1. Respondent filed an Answer and Memorandum of Points and Authorities in Support on August 26, 2021. Resp't Answer and Mem. P. & A. Supp. Answer, ECF Nos. 10, 10-1. Petition filed a Traverse on November 5, 2021. Traverse, ECF No. 17.

## IV.   SCOPE OF REVIEW

Harrell's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of

clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

A federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). In order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

/ / /

1  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541

2  U.S. 652, 664 (2004)).

3      Where there is no reasoned decision from the state's highest court, the Court

4  "looks through" to the underlying appellate court decision and presumes it provides the

5  basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S.

6  797, 805–06 (1991). If the dispositive state court order does not "furnish a basis for its

7  reasoning," federal habeas courts must conduct an independent review of the record to

8  determine whether the state court's decision is contrary to, or an unreasonable application

9  of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th

10  Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75–76); *accord Himes v.*

11  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite

12  Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at

13  8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts

14  [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly

15  established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d),

16  means "the governing principle or principles set forth by the Supreme Court at the time

17  the state court renders its decision." *Andrade*, 538 U.S. at 72.

18  **V.    DISCUSSION**

19      Harrell raises seven grounds for relief in his Petition:  (1) he received ineffective

20  assistance of appellate counsel in violation of his Sixth Amendment rights; (2) there was

21  insufficient evidence to support his conviction, in violation of his right to due process; (3)

22  the trial court improperly instructed the jury on self-defense, in violation of his due

23  process rights; (4) at trial, a bailiff was posted right next to Harrell as he testified, in

24  violation of his due process rights; (5) the prosecutor engaged in several instances of

25  misconduct in violation of his due process rights; (6) the trial judge was biased and

26  engaged in misconduct, in violation of his due process rights; and  (7) the cumulative

27  impact of trial errors amounted to a violation of due process. *See generally*, Pet., ECF No.

28  1. In his Traverse, Harrell appears to raise, for the first time, a claim that the trial court

erroneously instructed the jury sua sponte on voluntary manslaughter and that his counsel was ineffective in failing object to the instruction at trial. *See* Traverse, ECF No. 17 at 6–8, 17–18, 22–24.

Respondent argues that portions of claims five and six are procedurally defaulted and thus barred from federal habeas review. *See* Resp't Mem. P. & A. Supp. Answer, ECF No. 10-1 at 28–29, 34–36. In addition, Respondent contends all of Harrell's claims fail on the merits. *See generally*, *id.* at 17–53.

### A.    *Ineffective Assistance of Appellate Counsel*

In ground one, Harrell argues he was denied effective assistance of appellate counsel. Pet., ECF No. 1 at 16–17. Specifically, Petitioner contends appellate counsel was ineffective when he failed to timely file Harrell's petition for review with the California Supreme Court. *Id.* at 16. Harrell raised this claim in his petition for writ of habeas corpus filed with the California Supreme Court. *See* Cal. Sup. Ct Pet., ECF No. 11-32 at 3–4. The court denied the petition without comment or citation. *See* Cal. Sup. Ct. Docket, ECF No. 11-33. When a state court does not supply reasoning for its decision, a federal court "must engage in an independent review of the record and ascertain whether the state court's decision was objectively unreasonable." *Castellanos v. Small*, 766 F.3d 1137, 1145 (9th Cir. 2014) (internal quotation marks omitted). Independent review of the record "is not a de novo review of the constitutional question," but rather the only way a federal court can determine whether a silent state court decision is objectively unreasonable. *Murray v. Schriro*, 745 F.3d 996, 997 (9th Cir. 2014).

The Due Process Clause of the Fourteenth Amendment guarantees criminal defendants the right to the effective assistance of counsel on their first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Miller v. Keeney*, 882 F. 2d 1428, 1431 (9th Cir. 1989). There is, however, no right to counsel on discretionary appeals. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also Smith v. Idaho*, 392 F.3d 350, 356–57 (9th Cir. 2004) ("It is well-established that criminal defendants have no constitutional right to counsel beyond their first appeal as of right, and hence no right to counsel in a

9

discretionary appeal to the State's highest court."). Where no constitutional right to counsel exists, there can be no claim of ineffective assistance. *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982). Review of a felony conviction by the California Supreme Court is discretionary. Cal. Rules of Ct. 8.500. Therefore, Harrell cannot pursue an ineffective assistance claim based on appellate counsel's failure to file a timely petition for discretionary review of the California Court of Appeal's decision. *See Davis v. Adams*, No. 10-cv-9861-AHM-E, 2011 WL 1258294, at *1 (C.D. Cal. Feb. 25, 2011) ("Petitioner's claim that counsel subsequently was ineffective for failing to file a timely petition for review fails to present a colorable federal question.").

Even assuming Harrell could establish a right to effective assistance of counsel in timely filing a discretionary appeal, he would not be entitled to relief here because he cannot establish prejudice. It is clearly established that "[t]he proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland [v. Washington*, 466 U.S. 668 (1984)]." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535–36 (1986)). A petitioner must first show that his appellate counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.  A petitioner must then show he was prejudiced by counsel's errors by demonstrating that he would have prevailed on appeal absent counsel's errors. *See id.* at 694; *Smith*, 528 U.S. at 285. Here, Harrell filed a petition for writ of habeas corpus with the California Supreme Court after his petition for review was rejected for filing. In his habeas petition he raised the same claims appellate counsel attempted to raise in the untimely petition for review. *Compare*, Pet. Rev., ECF No. 11-30 and Cal. Sup. Ct. Pet., ECF No. 11-32. The California Supreme Court denied the habeas petition. Cal. Sup. Ct. Docket, ECF No. 11-33. As such, Harrell cannot establish he would have prevailed with his appeal to the high court had counsel timely filed the petition for review. *See Smith*, 528 U.S. at 285. Indeed, based on the denial of Harrell's petition for writ of habeas corpus, it is clear the court would have denied those same claims on direct review.

Therefore, the state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 412–13; 28 U.S.C. §2254(d)(1). Moreover, the state court's adjudication did not involve an "unreasonable determination of the facts in light of the evidence presented in the state court proceedings," because Petitioner has not demonstrated that the state court factual findings are objectively unreasonable. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(d)(2). Claim one is denied.

### B.    *Sufficiency of the Evidence*

In his second claim, Harrell contends his conviction was based on insufficient evidence in violation of his due process rights. Pet., ECF No. 1 at 17–21. Specifically, he alleges the evidence showed he acted in self-defense and therefore his convictions for attempted voluntary manslaughter and assault were based on insufficient evidence as a matter of law. *Id.* at 17–21. Respondent argues the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See* Resp't Mem. P. & A. Supp. Answer, ECF No. 10-1 at 17–21.

### 1.    State Court Opinion

Petitioner raised this claim in his habeas petition to the California Supreme Court, which was denied without comment or citation. *See* Cal. Sup. Ct. Pet., ECF No. 11-32 at 5–8; Cal. Sup. Ct. Docket, ECF No. 11-33. This Court therefore looks through to the last reasoned opinion from the state court. *See Ylst*, 501 U.S. at 805–06. In this case, that is the opinion of the California Court of Appeal. In denying Harrell's sufficiency of evidence claim, the appellate court stated, in relevant part:

> The guilty verdicts returned for the attempted voluntary manslaughter and assault with a deadly weapon charges indicate the jury necessarily found Harrell did not act in perfect self-defense. Stated differently, the jury necessarily found Harrell did not act under an honest and reasonable belief in the need to defend himself. However, the jury acquitted Harrell of the greater offense of attempted murder and convicted him only of the lesser included offense of attempted voluntary manslaughter. As noted ante, the attempted voluntary manslaughter charge required the prosecution to

11

establish Harrell acted under an actual, albeit unreasonable, belief in the need to defend himself. [footnote 3: The parties agree Harrell did not act in the heat of passion, which is the alternative means by which the jury could have found him guilty of attempted voluntary manslaughter. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1136–1137.)] Thus, in assessing the sufficiency of the evidence, our task is to determine whether substantial evidence supported the finding that Harrell's use of force was unreasonable.

""""In assessing the sufficiency of the evidence, we review the record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."' [Citation.] We resolve all evidentiary conflicts and questions of credibility 'in favor of the verdict, drawing every reasonable inference the jury could draw from the evidence.'" (*Brady*, supra, 22 Cal.App.5th at p. 1014.)

On the record before us, we conclude substantial evidence supported the verdicts based on a lack of objective reasonableness. The victim testified he was unarmed during the confrontation and no evidence was introduced to the contrary. There also was no evidence demonstrating Harrell believed the victim possessed a weapon during the confrontation. The jury reasonably could have concluded the force Harrell used was excessive and unreasonable based on the victim's unarmed status—even if, as Harrell testified, the victim instigated the confrontation. (*People v. Clark* (1982) 130 Cal.App.3d 371, 380 [perfect self-defense improper where "victim was not armed with a weapon, and defendant did not testify that he believed that victim intended to use a weapon against him"], abrogated on another issue in *People v. Blakeley* (2000) 23 Cal.4th 82, 92; Levenson & Ricciardulli, Cal. Practice Guide: Criminal Law (The Rutter Group 2019) § 4:26 ["A good example [of an unreasonable belief] is when a victim without a weapon attacks a defendant, and the defendant responds by killing the victim with a firearm."].)

The jury rationally could have concluded Harrell's use of force was unreasonable based on other evidence as well. The victim testified he was 60 years old, was highly intoxicated, and did not have his cane with him on the evening at issue, although he typically used a cane to ambulate. The driver-witness also testified he observed Harrell and the victim were separated from one another by a fairly large distance of eight to 10 feet. From this evidence, a jury rationally could have found it was unreasonable of Harrell to believe

12

1   the unarmed, intoxicated, and elderly victim possessed the agility and
2   coordination necessary to pose an imminent danger to him.

3   *See* Cal. Ct. App. Opinion, ECF No. 11-28 at 8–9.

4           2.   <u>Clearly Established Law</u>

5        It is clearly established that the Due Process Clause is violated "if it is found that
6   upon the evidence adduced at the trial no rational trier of fact could have found proof of
7   guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also*
8   *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam); *Juan H. v. Allen*, 408 F.3d 1262,
9   1275 (9th Cir. 2005). When reviewing a state court's conviction for sufficiency of the
10  evidence, a federal court must determine whether, "after viewing the evidence in the light
11  most favorable to the prosecution, any rational trier of fact could have found the essential
12  elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. On federal
13  habeas, courts must "apply the standards of *Jackson* with an additional layer of
14  deference" under Section 2254(d)(1). *Id.*; *see also Coleman v. Johnson*, 566 U.S. 650,
15  651 (2012) ("We have made clear that *Jackson* claims face a high bar in federal habeas
16  proceedings because they are subject to two layers of judicial deference."). This doubly
17  deferential standard limits a federal habeas court's inquiry to whether the state court's
18  rejection of a sufficiency of the evidence challenge was an objectively unreasonable
19  application of *Jackson*. *Emery v. Clark*, 643 F.3d 1210, 1214 (9th Cir. 2011); *see also*
20  *Coleman*, 566 U.S. at 651. A petitioner faces a "heavy burden" when seeking habeas
21  relief by challenging the sufficiency of evidence. *Juan H.*, 408 F.3d at 1274.

22       In evaluating a sufficiency of the evidence claim, courts must first look to the
23  applicable state law defining the substantive elements of the crime. *Chein v. Shumsky*,
24  373 F.3d 978, 983 (9th Cir. 2004) (en banc) (stating the *Jackson* standard "must be
25  applied with explicit reference to the substantive elements of the criminal offense as
26  defined by state law."); *see also Juan H.*, 408 F.3d at 1278 n.14 (citation omitted) (stating
27  that federal habeas courts "look to [state] law only to establish the elements of [the crime]
28  and then turn[s] to the federal question of whether the [state court] was objectively

unreasonable in concluding that sufficient evidence supported [the conviction]).” In determining whether the evidence was sufficient, this Court must follow the California courts’ interpretation of its own state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *Emery*, 643 F.3d at 1214. However, the “minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law.” *Coleman*, 566 U.S. at 655.

The *Jackson* standard requires a reviewing court to “respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict.” *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). “[C]ircumstantial evidence can be used to prove any fact, including facts from which another fact is to be inferred, and is not to be distinguished from testimonial evidence insofar as the jury’s fact-finding function is concerned.” *See United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir. 1990). Mere suspicion or speculation, however, cannot be the basis for creation of logical inferences. *See Walters*, 45 F.3d at 1358.

3.   Discussion

Under California law, manslaughter is defined as “the unlawful killing of a human being without malice.” Cal. Penal Code § 192. An “attempt” under state law consists of two elements: “a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.” Cal. Penal Code § 21a. Attempted voluntary manslaughter, which lacks the element of malice, is a lesser included offense of attempted murder. *People v. Millbrook*, 222 Cal. App. 4th 1122, 1137 (Cal. Ct. App. 2014); *People v. Gutierrez*, 112 Cal. App. 4th 704, 708–09 (Cal. Ct. App. 2003). Malice is “presumptively absent when the defendant . . . kills in the unreasonable, but good faith, belief that deadly force is necessary in self-defense.” *People v. Manriquez*, 37 Cal. 4th 547, 583 (Cal. 2005). Thus, one who commits a direct but ineffectual act towards killing a person in imperfect defense—an actual but unreasonable belief he must defend himself from imminent danger of death or great bodily injury—is guilty only of attempted

14

manslaughter. *People v. Booker*, 51 Cal. 4th 141, 182 (Cal. 2011); *People v. Avila*, 46 Cal. 4th 680, 705 (Cal. 2009).

While imperfect (or unreasonable) self-defense mitigates culpability by negating malice, perfect self-defense is a complete defense to any crime and requires "an honest and *reasonable* belief" that there is an imminent danger that the other person will kill the defendant or cause him great bodily injury. *People v. Minifie*, 13 Cal. 4th 1055, 1064–65 (Cal. 1996) (quoting *People v. Goins*, 228 Cal. App. 3d 511, 516 (Ct. App. 1991) (emphasis in original)). The state has the burden of proving the lack of self-defense. *People v. Humphrey*, 13 Cal. 4th 1073, 1103 (Cal. 1996) ("Defendant does not have to prove the homicide was justified; she merely has to raise a reasonable doubt that it might have been.")

To find Harrell guilty of attempted voluntary manslaughter based on imperfect self-defense, the jury was instructed it must find the following elements beyond a reasonable doubt:

The defendant acted in imperfect (self-defense) if:

1.   The defendant took at least one direct but ineffective step toward killing a person.

2.   The defendant intended to kill when he acted.

3.   The defendant believed that he was in imminent danger of being killed or suffering great bodily injury.

AND

4.    The defendant believed that the immediate use of deadly force was necessary to defend against the danger.

BUT

5.   At least one of the defendant's beliefs was unreasonable.

Clerk's Tr., ECF No. 11-4 at 436–37; *see also* Judicial Council of California Criminal

Jury Instruction ("CALCRIM") No. 604. The jury was further instructed on the contours of self-defense, both perfect and imperfect, as it relates to attempted homicide and assault. Clerk's Tr. vol. 2, ECF No. 11-4 at 435–38; *see also* CALCRIM Nos. 505, 604, 875.

The denial of Harrell's sufficiency of evidence claim by the state appellate court was not unreasonable or contrary to clearly established law. First, the appellate court applied the *Jackson* standard when analyzing Harrell's claim. *See* Cal. Ct. App. Opinion, ECF No. 11-28 at 8–9 (citing *People v. Brady*, 22 Cal. App. 5th 1008, 1014 (Ct. App. 2018) (stating "we review the record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.") Therefore, the state court relied on clearly established Supreme Court law.

Second, the appellate court's application of the *Jackson* standard was not unreasonable. Harrell argues that the prosecution failed to prove a lack of perfect self-defense and as such his convictions for attempted voluntary manslaughter and assault were based on insufficient evidence. Pet., ECF No. 1 at 17–19. Put another way, Harrell claims there was insufficient evidence to establish he acted unreasonably (as opposed to reasonably) when he defended himself during the fight with Hodge. At trial, the jury heard testimony from both Hodge and Harrell. They each offered different versions of events on the day of the altercation. For instance, Hodge and Harrell gave different testimony regarding how the fight started. Hodge testified that Harrell "ambushed" him by attacking him from behind with a knife while Hodge was trying to get into his apartment. Rep.'s Tr., vol. 9, ECF No. 11-15 at 1533–34, *see also* Clerk's Tr., vol. 1, ECF No. 11-1 at 121–22, 147. Harrell, on the other hand, testified that it was Hodge who approached him first and wanted to fight. Harrell stated that Hodge pinned him against a fence while he was on his bike and held him in a chokehold. Harrell testified he grabbed his knife when Hodge fell and only used it to block Hodge's blows. Rep.'s Tr., ECF No. 11-18 at 2470–72, 2705–08, 2759–60; Clerk's Tr., ECF No. 11-1 at 194–98, 200–01.

As noted above, this Court must view the evidence in the light most favorable to the prosecution and assume the jury "resolved all [evidentiary] conflicts in a manner that supports the verdict." *Walters*, 45 F.3d at 1358. Thus, given the different accounts of what happened that night offered by Hodge and Harrell, a reasonable juror could have credited additional evidence which suggested Harrell had been harassing and threatening Hodge for weeks prior to the incident. Hodge testified that days before the altercation, Harrell had accused Hodge of stealing his clothes and "messing around" with his daughter. Rep.'s Tr., ECF No. 11-14 at 1349–50; *see also* Clerk's Tr., ECF No. 11-1 at 120, 144–45. In addition, a neighbor of Hodge's testified to hearing Harrell accuse Hodge of raping his daughter. Rep.'s Tr., ECF No. 11-14 at 1223–25; *see also* Clerk's Tr., ECF No. 11-1 at 170–71. The neighbor also heard Harrell threaten to knock out Hodge's apartment windows. Rep.'s Tr., ECF No. 11-14 at 1227.

Hodge testified that Harrel had previously threatened to hit him with a rock and to run him out of the neighborhood. Just days before the incident, someone thew a rock through Hodge's window and he suspected it was Harrell. *Id.*, ECF No. at 1255–57, 1352–53. Hodge previously caught Harrell picking up rocks outside his apartment and acting as though he was about to throw one at his window. *Id.* at 1351. When Hodge confronted him, Harrell dropped the rock and fled. *Id.* Harrell also left repeated voicemail messages for Hodge, threatening to harm him. Clerk's Tr., ECF No. 11-1 at 155, 157, 159, 161. The day before the incident, Hodge had called 911 to report that Harrell had been harassing him and he felt threatened. *Id.* at 82–83. Indeed, Hodge testified that just hours before the altercation, Harrell yelled at him and demanded to know where his clothes were and again accused Hodge of "messing" with his daughter. Rep.'s Tr., ECF No. 11-14 at 1244–45. Hodge reported the threat to police. Clerk's Tr., ECF No. 11-1. at 78–79.

While this circumstantial evidence does not conclusively establish whether Harrell acted in self-defense, it provides context for the altercation. Viewing all the evidence in the light most favorable to the verdict, reasonable juror could infer that it was Harrell

who provoked the fight, as Hodge had testified. *See Stauffer*, 922 F.2d at 514 (stating that jurors may make reasonable inferences based on circumstantial evidence). And even if a juror concluded that Hodge instigated the fight or the two engaged in mutual combat, it is still possible to reasonably conclude that regardless how the altercation began, Harrell's use of force was unreasonable under the circumstances. *See* CALCRIM No. 604 (stating a defendant's belief that the immediate use of deadly force was necessary to defend against the danger must be reasonable). It was undisputed that Hodge was unarmed. Rep.'s Tr., ECF No. 11-15 at 1536, ECF No. 11-16 at 1838, ECF No. 11-18 at 2707–08, 2759–60. Hodge was also 60 years old at the time and inebriated, with a blood alcohol content of .263, over three times the legal limit for driving impaired. Rep.'s Tr., ECF No. 11-14 at 1321; ECF No. 11-17 at 2222. When police contacted Harrell the day after the stabbing, Harrell appeared uninjured but for a single scratch on his neck. Rep.'s Tr., ECF No. 11-16 at 1907–08. A reasonable juror could infer from this evidence that the unarmed and impaired Hodge lacked the coordination to pose a serious physical threat to Harrell. A rational juror could therefore conclude Harrell's use of a knife, even in self-defense, was an unreasonable amount of force under the circumstances. *See Walters*, 45 F.3d at 1358.

Harrell argues he is entitled to habeas relief because the testimony of a witness showed that the fight took place near the street and suggested that Hodge was continuing to threaten Harrell. The witness, Gustavo Figueroa, testified that he saw two men facing off with each other near the street that evening. *Id.* at 1837, 1839–40. Figueroa never saw any contact between the two men. *Id.* at 1839. He stated the men were about eight feet apart and that Hodge appeared to be in a defensive posture. *Id*. Figueroa did not see any blood on either man but he acknowledged that it was dark and difficult to see. *Id.* at 1839, 1841. He testified that the two appeared to be engaged in mutual combat (though he did not see any fighting). *Id.* at 1839. Nothing about Figueroa's testimony contradicts the jury's finding that Harrell's use of force was unreasonable under the circumstances. In short, Harrell's argument amounts to a re-litigation of the facts presented to the jury at

trial. As discussed above, it is for the jury to decide issues of credibility and this Court may not reweigh that evidence. *Cavazos*, 565 U.S. at 7 (*Jackson* precludes federal habeas court from reweighing evidence when conducting review for sufficiency of the evidence); *see also Walters*, 45 F.3d at 1358 (federal habeas court "must respect the province of the jury to determine the credibility of witnesses"). On federal habeas, a court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296–97 (1992) (quoting *Jackson*, 443 U.S. at 326).

Finally, Harrell appears to argue that the California Court of Appeal cited cases in support of its analysis that are factually distinguishable from the facts of his case. Pet., ECF No. 1 at 19–21. To the extent Harrell suggests the appellate court erroneously interpreted state law, the United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76. This Court must therefore defer to the state court's construction unless it is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation." *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989). Here, the mere allegation that cases cited by the appellate court are *factually* distinguishable from Harrell's case is insufficient to the suggest the appellate court's interpretation of the *law* was arbitrary or amounted to subterfuge to avoid federal review. *See id.*

Therefore, based on a review of the evidence in the most favorable light to the verdict, a reasonable juror could find Petitioner acted on an actual but unreasonable belief that he must defend himself from imminent danger. While the jury could have concluded that Harrell's belief was reasonable, it did not. This Court must defer to that finding. *See Jackson*, 443 U.S. at 326; *Walters*, 45 F.3d at 1358. The state appellate court's rejection of this claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent. *See Williams*, 529 U.S. at 412–13; 28 U.S.C. §2254(d)(1). Further, based on a

thorough review of the trial court record, the Court finds the decision was not based on an unreasonable determination of the facts. *See Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2). Harrell is not entitled to relief as to ground two.

### C.    *Jury Instructions*

In ground three, Harrell claims his rights to due process and to present a meaningful defense were violated when the trial court improperly instructed the jury on provocation and self-defense. Pet., ECF No. 1 at 22–23. Petitioner raised this claim in his petition for writ of habeas corpus filed in the California Supreme Court. Cal. Sup. Ct. Pet., ECF No. 11-32 at 9–10. The petition was denied without comment or citation. *See* Cal. Sup. Ct. Docket, ECF No. 11-33. This Court therefore looks through to the reasoned state court opinion. *Ylst*, 501 U.S. at 805–06. In this case that is the appellate court's opinion affirming Petitioner's conviction. In denying the jury instruction claim, the appellate court stated:

> The trial court instructed the jury on the principle of contrived self-defense using CALCRIM No. 3472. CALCRIM No. 3472 provides as follows: "Right to Self-Defense: May Not Be Contrived [¶] A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force." Harrell contends the court erred in charging the jury with CALCRIM No. 3472 because the instruction had no application under the facts of the case. He argues his theory at trial was that the victim instigated the confrontation, while the prosecution's theory at trial was that Harrell attacked the victim without warning. He claims that under either party's theory, he did not provoke the victim to fight.

> We do not address Harrell's instructional error argument because the asserted error, if any, was harmless. Throughout closing arguments, the prosecution maintained that Harrell engaged in a "cold, calculated, and precise" attack on the victim "from behind when he was most vulnerable." It mentioned the contrived self-defense instruction only once and, immediately thereafter, urged the jury it did not need to resort to such a theory. As the prosecution explained, "self-defense [would not even] come in" under the prosecution's theory—i.e., if Harrell attacked the victim.

> Further, the court instructed the jury it may receive instructions that did not apply to the case, depending on the jury's findings, and directed the

jury not to draw assumptions from the giving of an instruction. In accordance with these instructions, we must presume the jury disregarded CALCRIM No. 3472 if it found there was not substantial evidence to support its application. (*People v. Frandsen* (2011) 196 Cal.App.4th 266, 278 ["[T]he jury is presumed to disregard an instruction if the jury finds the evidence does not support its application."]; *People v. Eulian* (2016) 247 Cal.App.4th 1324, 1334–1335 [contrived self-defense instruction harmless].)

Finally, the verdicts themselves confirm the jury did not rely on CALCRIM No. 3472. As noted ante, the jury found Harrell guilty of the lesser included offense of attempted voluntary manslaughter on grounds that he acted in imperfect self-defense. This verdict would not have been possible if the jury believed the self-defense was contrived. If the jury believed the self-defense was contrived, it necessarily would have rejected all of his claims of self-defense, including the claim of imperfect self-defense, and found him guilty of the greater offense of attempted murder. [Footnote 4 omitted.] The fact the jury did not do so compels us to conclude it did not rely on CALCRIM No. 3472 or find that Harrell acted in contrived self-defense.

Cal. Ct. App. Opinion, ECF No. 11-28 at 10–11.

First, Respondent argues Harrell's jury instruction claim is not cognizable on federal habeas because it involves only issues of state law. Resp't Mem. P. & A. Supp. Answer, ECF No. 10-1 at 21–22. The Supreme Court has held that issues purely of state law are not cognizable on federal habeas corpus review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1974). Instructional error alone does not raise a cognizable claim on federal habeas. *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). Here, however, Harrell does not argue the instruction was merely erroneous under California law; he argues that giving the instruction amounted to a violation of his due process rights because it rendered his trial fundamentally unfair and prevented him from presenting a meaningful defense. *See* Pet., ECF No. 1 at 22. Therefore, he has stated a cognizable federal claim. *See Cupp v. Naughten,* 414 U.S. 141, 146, (1973) (holding an instructional error will support federal habeas relief only if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process").

Next, Respondent argues that even assuming Harrell has raised a federal claim, he is not entitled to relief because the claim was reasonably rejected by the state appellate court. Resp't Mem. P. & A. Supp. Answer, ECF No. 10-1 at 21–22. It is clearly established that for instructional error to amount to a due process violation on federal habeas review, a petitioner must show the ailing instruction so infected the entire trial as to render it fundamentally unfair. *See Estelle*, 502 U.S. at 71–72; *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). This requires a petitioner to show both that the instruction was defective and that there was a "reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (quoting *Estelle*, 502 U.S. at 72 (internal quotation marks and citation omitted)); s*ee also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'").

The instruction is not considered in isolation but rather in the context of trial court record and the jury instructions as a whole. *See Estelle*, 502 U.S. at 72; *see also, e.g., Middleton v. McNeil*, 541 U.S. 433, 434–35 (2004) (per curiam) (finding no reasonable likelihood that jury misled by single contrary instruction on imperfect self-defense defining "imminent peril" where three other instructions correctly stated the law). Finally, a petitioner is not entitled to habeas relief unless the instructional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). In other words, a petitioner seeking federal habeas relief may obtain review of constitutional claims of instructional error but is only entitled to relief if the error resulted in "actual prejudice." *Brecht*, 507 U.S. at 637; *see Calderon v. Coleman*, 525 U.S. 141, 146–47 (1998).

Here, the trial court instructed the jury pursuant to the standard provocation instruction set forth in CALCRIM No. 3472. It states: "A person does not have the right

1   to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse

2   to use force." *See* Clerk's Tr., ECF No. 11-4 at 442. Harrell does not contend the

3   instruction under CALCRIM No. 3472 was a misstatement of California law. He argues

4   only that the jury should not been given the instruction because there was an insufficient

5   factual basis to support the theory. Pet., ECF No. 1 at 22–23. Yet no clearly established

6   federal law constitutionally prohibits a trial court from instructing a jury with a factually

7   inapplicable but accurate statement of state law. On the contrary, the Supreme Court has

8   held that due process is not violated when jurors are instructed on a legal theory that lacks

9   evidentiary support because jurors are capable of analyzing the evidence presented at

10  trial. *Griffin v. United States*, 502 U.S. 46, 59–60 (1991). As such, instructing the jury

11  under CALCRIM No. 3472 did not render Harrell's trial fundamentally unfair. The state

12  court's denial of the claim that the instruction infringed on his due process rights because

13  it lacked a factual basis was not unreasonable application of clearly established law. *See*

14  *Williams*, 529 U.S. at 407–08; *see also* 28 U.S.C. § 2254(d)(1).

15      Harrell fairs no better in arguing that the state court prevented him from presenting

16  a full defense when it instructed the jury under CALCRIM No. 3472. Due process of law

17  also encompasses the right to present a complete defense. *California v. Trombetta*, 467

18  U.S. 479, 485 (1984). Criminal prosecutions must "comport with prevailing notions of

19  fundamental fairness" and criminal defendants must "be afforded a meaningful

20  opportunity to present a complete defense.'" *Clark v. Brown*, 442 F.3d 708, 714 (9th Cir.

21  2006) (quoting *Trombetta*, 467 U.S. at 485). Merely giving a legally accurate but

22  inapplicable instruction does not itself prevent a defendant from presenting a defense.

23  Nothing about instructing the jury under CALCRIM No. 3472 prevented Harrell from

24  presenting his defense that he acted reasonably when he defended himself. Moreover,

25  Petitioner does not cite, and the Court is not aware of, any clearly established federal law

26  holding that presentation of a meaningful defense is constitutionally thwarted when a trial

27  court instructs a jury with a factually inapplicable but accurate statement of state law.

28  / / /

Indeed, district courts facing this very issue have concluded that a California court's decision to give CALCRIM No. 3472 did not violate due process right to present a complete defense because the instruction was accurate under state law and the petitioner failed to point to "clearly established law constitutionally prohibiting a trial court from instructing a jury on an irrelevant but accurate statement of state law." *See Steele v. Holland*, No. 15-cv-01084-BLF, 2017 WL 2021364, at *8 (N.D. Cal. May 12, 2017) (rejecting argument that instructing jury with CALCRIM No. 3472 despite lack of factual support impaired petitioner's right to present complete defense); *see also Boegeman v. Smith*, No. 3:17-cv-00861-GPC-KSC, 2018 WL 3140469, at *10 (S.D. Cal. June 27, 2018) (finding factual invalidity of jury instruction was state law error and did constitute cognizable federal claim). Moreover, no clearly established federal law "constitutionally prohibits a trial court from instructing a jury with a factually inapplicable but accurate statement of state law." *Fernandez v. Montgomery*, 182 F. Supp. 3d 991, 1013 (N.D. Cal. 2016); *accord Acajabon v. Espinoza*, No. 1:16-cv-00183-MJS, 2017 WL 5608070, at *13 (E.D. Cal. Nov. 21, 2017). Where there is no clearly established federal law, the state court's denial of the claim could not have involved an unreasonable application of clearly established Supreme Court law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding" the claim, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'") (alterations in original); *see also Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.").

Therefore, based on the foregoing, the state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law. *See Williams*, 529 U.S. at 407–08; *see also* 28 U.S.C. § 2254(d)(1). Moreover, the state court's adjudication did not involve an "unreasonable determination of the facts in light of the evidence

/ / /

24

presented in the state court proceedings." *See Miller-El*, 537 U.S. at 340; *see also* 28 U.S.C. § 2254(d)(2). Claim three is denied.

### D.     *Security During Petitioner's Testimony*

In ground four, Harrell argues his due process rights were violated when the trial court ordered a second bailiff be posted in the courtroom near Petitioner as he testified. He contends that a "sudden posting of an additional bailiff during petitioner's testimony was highly prejudicial in that i[t] demonstrated the court's belief that the petitioner was dangerous." Pet., ECF No. 1 at 24–25. Respondent contends the state court reasonably denied the claim based on clearly established law. Resp't Mem. P. & A. Supp. Answer, ECF No. 10-1 at 23–27.

### 1.     Background

Before discussing the merits of this claim, a short factual summary is helpful. Harrell began his trial testimony on April 3, 2018. *See* Rep.'s Tr., ECF No. 11-17 at 2252. The next morning, before the jury entered the courtroom, the judge stated: "This morning the Court was alerted by the bailiffs that Mr. Harrell seems agitated and so [the bailiffs] are requesting there be a second bailiff who will be seated next to Mr. Harrell while [he] testifies." Rep.'s Tr., ECF 11-18 at 2407. The trial judge then asked the bailiff to elaborate on what happened. The bailiff explained that when he went to get Petitioner for court, he told Harrell that he needed to check his property, specifically an envelope Harrell was carrying. *Id.* at 2407–08. According to the bailiff, Harrell got an "attitude" and "snarled" at him that his property had already been checked by other deputies. *Id.* at 2408. The bailiff admitted that he then grabbed the envelope out of Harrell's hand and the two argued about the envelope for a "minute or two." *Id.*

After hearing the report from the bailiff, the trial judge noted that this was not the first time Harrell acted inappropriately. The judge summarized previous issues between Harrell and security staff. He noted that Harrell had previously been removed from the courtroom when he "became confrontational with [a different] bailiff." *Id.* In addition, after the jury was selected, Harrell "had an outburst" in the jury's presence one morning

and, after being warned and continuing to disrupt the proceedings, he was again removed from the courtroom. *Id.* The judge found that these prior incidents, coupled with Harrell's behavior with the bailiff on duty that morning, made it reasonable for a second bailiff to be seated next to Harrell when he resumed his testimony. *Id.* The court directed Harrell to continue his testimony with a second deputy seated in a chair near the back door of the courtroom, about fifteen feet from the witness stand, and near the jury box. *Id.* at 2412, 2416. At that point, Harrell had another outburst and accused the trial court of maligning him as a violent person when he was not. *Id.* at 2413–14. The trial court noted that rules of decorum required Harrell to refrain from interrupting or creating disturbances. *Id.* at 2417–18. The judge also stated that the second deputy was not there to prevent Harrell from testifying but to ensure he complied with the court rules regarding security and decorum. *Id.* at 2419. Harrell then testified without further incident that day.

### 2.   State Court Opinion

Petitioner raised this claim in his petition for habeas corpus filed with the California Supreme Court. Cal. Sup. Ct. Pet., ECF No. 11-32 at 11–12. The high court denied the petition without comment or citation. Cal. Sup. Ct. Docket, ECF No. 11-33, which was denied without comment or citation. In the last reasoned state court decision to address the issue, the appellate court denied the claim, stating:

> On the second day of Harrell's testimony, the courtroom bailiff notified the court that Harrell was acting in a confrontational manner and, therefore, the bailiff requested a second bailiff be stationed in the courtroom for the remainder of his testimony. The court granted the request and permitted a second bailiff to be stationed next to the jury box. Harrell contends the court erred in granting the request and claims the presence of the second bailiff conveyed an improper message to the jury that he was "extra dangerous."

> "'Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof

at trial.'" [Citation.] '[E]xtraordinary security practices carry an inordinate risk of infringing upon a criminal defendant's right to a fair trial' and 'must be justified by a particularized showing of manifest need sufficient to overcome the substantial risk of prejudice they pose.'" (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 624.) "For example, visible physical restraints like handcuffs or leg irons may erode the presumption of innocence because they suggest to the jury that the defendant is a dangerous person who must be separated from the rest of the community." (*People v. Stevens* (2009) 47 Cal.4th 625, 632 (*Stevens*).)

However, "the stringent showing required for physical restraints like shackles is the exception, not the rule. Security measures that are not inherently prejudicial need not be justified by a demonstration of extraordinary need. [Citations.] In contrast to physical restraints placed on the defendant's person, [the Supreme Court has] upheld most other security practices when based on proper exercises of discretion," including "the stationing of security or law enforcement officers in the courtroom." (*Stevens*, supra, 47 Cal.4th at pp. 633–634.) "'[T]he use of identifiable security guards in the courtroom during a criminal trial is not inherently prejudicial,' in large part because such a presence is seen by jurors as ordinary and expected and because of the many nonprejudicial inferences to be drawn from the presence of such security personnel." (*People v. Jenkins* (2000) 22 Cal.4th 900, 998.)

The record reflects the trial court did not abuse its discretion in ordering the stationing of a second bailiff. Harrell exhibited disruptive behavior throughout the trial, including during the following incidents: (1) he was noncompliant and confrontational with bailiffs on multiple occasions; (2) he disrupted proceedings and was removed from the courtroom for yelling the court was "stackin' up the deck against" him and he was "not scared" of the court; (3) he repeatedly "made noises" and visibly reacted to the court's rulings; and (4) during a hearing ostensibly conducted pursuant to *People v. Marsden* (1970) 2 Cal.3d 118, he did not use the hearing for its intended purpose and instead used it to malign the prosecutor and the court. Further, during the court's ruling on the request for a second bailiff, Harrell interrupted proceedings and proclaimed the court was railroading him and was "not [more] powerful than God ...."

Given Harrell's history of disruptions and his apparent inability to control his outbursts, the court did not abuse its discretion in concluding a second bailiff was necessary "to maintain courtroom security and orderly

proceedings." (*People v. Hayes* (1999) 21 Cal.4th 1211, 1269; see also *People v. Duran* (1976) 16 Cal.3d 282, 292, fn. 11 ["Evidence of any nonconforming conduct or planned nonconforming conduct which disrupts or would disrupt the judicial process if unrestrained may warrant the imposition of reasonable restraints if, in the sound discretion of the court, such restraints are necessary."].)

Cal. Ct. App. Opinion, ECF No. 11-28 at 12–14.

3.  Discussion

It is clearly established that "[c]entral to the right to a fair trial guaranteed by the Sixth and Fourteenth Amendments, is the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.'" *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986) (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978)). To that end, it may violate due process if security measures are so unnecessarily excessive as to threaten the "fairness of the factfinding process." *Holbrook*, 475 U.S. at 568. To determine whether a defendant's right to a fair trial was violated by the use of excessive courtroom security measures, courts must "look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial." *Hayes v. Ayers*, 632 F.3d 500, 521 (9th Cir. 2011) (quoting *Holbrook*, 475 U.S. at 572); *see also Williams v. Woodford*, 384 F.3d 567, 588 (9th Cir. 2004). Security measures are inherently prejudicial when they "tend[ ] to brand [the defendant] in [the jurors'] eyes with an unmistakable mark of guilt," *Holbrook*, 475 U.S. at 571 (internal quotations omitted), or when they create "an unacceptable risk . . . of impermissible factors coming into play." *Id.* at 570 (quoting *Williams*, 425 U.S. at 505,); *see also King v. Rowland*, 977 F.2d 1354, 1358 (9th Cir. 1992). If the practice is not found to be "inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." *Holbrook*, 475 U.S. at 572.

/ / /

3:21-cv-0255-RBM-AHG

1    Here, the state court's denial of Harrell's claim was neither contrary to, nor an

2    unreasonable application of, clearly established law. First, the California Court of Appeal

3    properly applied the standard set forth in *Holbrook. See* Cal. Ct. App. Opinion, ECF No.

4    11-28 at 12. Further, the state court reasonably concluded that Harrell had not shown that

5    the presence of a single additional bailiff was inherently prejudicial. *Id.* The state court's

6    conclusion was consistent with the Supreme Court's holding in *Holbrook*, where the

7    Court found that the presence of additional uniformed security officers sitting behind the

8    defendants at trial did not violate due process. *Holbrook*, 475 U.S. at 568–69; *see also*

9    *Hayes*, 632 F.3d at 522 ("*Holbrook* directly establishes that the placement of deputies in

10   and outside the courtroom at Hayes's trial was not inherently prejudicial."); *see also*

11   *Williams,* 384 F.3d at 588 (denying habeas relief because placement of four additional

12   marshals in the courtroom was not inherently prejudicial); *Ainsworth v. Calderon*, 138

13   F.3d 787, 797 (9th Cir. 1998) (finding the use of four, and sometimes six, deputy sheriffs

14   did not violate the defendant's right to a fair trial); *King v. Rowland*, 977 F.2d 1354, 1358

15   (9th Cir. 1992) (concluding the use of three deputy sheriffs to guard the defendant was

16   not inherently prejudicial).

17   Harrell argues the posting of an additional deputy only during his testimony

18   suggests actual prejudice. Pet., ECF No. 1 at 25. He contends the extra security measure

19   was unnecessary and improperly implied to the jury that Harrell was dangerous. *Id.* at 24.

20   The state court reasonably found this argument unpersuasive. As the appellate court

21   found, Harrell had exhibited disruptive behavior at other points during the trial, including

22   previous outbursts and confrontational behavior with bailiffs. *See* Rep.'s Tr., ECF No.

23   11-12 at 2411–14. Based on Harrell's behavior during prior proceedings, the inobtrusive

24   placement of an additional deputy was not inherently prejudicial. In sum, Harrell's

25   conclusory allegations are insufficient to undermine the state appellate court's

26   determination that the jurors were not actually influenced by the addition of a second

27   bailiff during his testimony. *Cf. Williams*, 384 F.3d at 588 (holding that "conclusory

28   / / /

allegations" that are "unsworn and unsupported by any proof or offer of proof" do not permit a finding of actual prejudice).

The state court's denial of ground four was neither contrary to, nor an unreasonable application of, clearly established law. *See Williams*, 529 U.S. at 412–13; 28 U.S.C. § 2254(d)(1). Moreover, the state court's adjudication did not involve an "unreasonable determination of the facts in light of the evidence presented in the state court proceedings." *See Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2). Ground four is therefore denied.

### E.    *Prosecutorial Misconduct*

In ground five, Harrell raises several instances of prosecutorial misconduct, falling into five general sub-claims. Specifically, he alleges his trial was rendered fundamentally unfair when the prosecutor improperly (1) failed to correct false testimony, (2) misstated evidence, (3) misstated the law, and (4) impugned defense counsel. Pet., ECF No. 1 at 26–29. He also argues (5) the cumulative effect of the prosecutor's misconduct violated due process. *Id.* at 29. Respondent argues that three of Petitioner's sub-claims are procedurally defaulted because defense counsel failed to object at trial. Resp't Mem. P. & A. Supp. Answer, ECF No. 10-1 at 28–29. In addition, Respondent asserts all five sub-claims fail on the merits because the state court's denial was neither contrary to, nor an unreasonable application of, clearly established law. *Id.* at 29–34.

### 1.    Procedural Default

Of the five prosecutorial misconduct subclaims, the California Court of Appeal found subclaims one, two and four were procedurally barred from appellate review because defense counsel failed object at trial. Cal. Ct. App. Opinion, ECF No. 11-28 at 15, 16, 19. In barring the sub-claims, the appellate court cited *People v. Krebs*, 8 Cal. 5th 265, 323 (Cal. 2019) (holding claim that witness provided false or misleading testimony was forfeited because defendant did not object to any of the testimony at the time it was offered"); *People v. Seumanu*, 61 Cal. 4th 1293, 1320 (Cal. 2015) (concluding defendant forfeited prosecutorial misconduct claim based on alleged misstatements of evidence by

30

failing to object) and *People v. Redd*, 48 Cal. 4th 691, 738 (Cal. 2010) (holding defendant forfeited challenge to prosecutor's allegedly denigrating statements on appeal because counsel did not object to the prosecutor's statements at trial), respectively). *See* Cal. Ct. App. Opinion, ECF No. 11-28 at 15, 16, 19.

Federal habeas relief may be barred under the procedural default doctrine if a state court denied claims because a petitioner failed to comply with the state's procedural requirements for presenting them. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). If the state's basis for barring the claim is both "independent of the federal question and adequate to support the judgment," the claim will be defaulted. *Id*. at 729. A state procedural bar is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. U.S. Dist. Ct. (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).

The Ninth Circuit has held that because procedural default is an affirmative defense, the state must satisfy an initial burden of pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). If the state meets this requirement, the burden shifts to the petitioner to assert "specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id*. The "ultimate burden" of proving procedural default, however, belongs to the state. *Id*.

Here, Respondent argues Harrell's failure to comply with California's contemporaneous objection rule prevents review of sub-claims one, two and four. *See* Resp't Mem. P. & A. Supp. Answer, ECF No. 10-1 at 28–29. The Ninth Circuit has recognized California's contemporaneous objection rule as independent and adequate. *See Zapata v. Vasquez*, 788 F.3d 1106, 1111–12 (9th Cir. 2015) (concluding contemporaneous objection rule was an adequate and independent state ground that barred federal habeas review of prosecutorial misconduct claim); *see also Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005) (finding claim was procedurally barred

from habeas review where state court found that petitioner failed to object at trial). Thus, Respondent has satisfied their initial burden and the burden now shifts to Harrell to "demonstrate the inadequacy of the state procedure." *Bennett*, 322 F.3d at 586. He has failed to do so here. Indeed, Harrell has raised no "specific factual allegations" and provided no "citation to authority" demonstrating inconsistent application of the contemporaneous objection rule. *See generally*, Traverse, ECF No. 17. Therefore, the Court finds Harrell has failed to satisfy his burden under *Bennett* and as such, sub-claims one, two and four of ground five are procedurally defaulted. *See Bennett*, 322 F.3d at 586.

Federal courts may still review procedurally defaulted claims if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, or (2) a showing of a miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S. at 750; *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Cook v. Schriro*, 538 F.3d 1000, 1025–26 (9th Cir. 2008).

Harrell argues that trial counsel was ineffective for failing to object to the prosecutor's misconduct. *See* Traverse, ECF No. 17 at 24–25. Ineffective assistance of counsel may establish cause, but attorney error short of constitutionally ineffective assistance of counsel does not. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citing *Murray v*, 477 U.S. at 488). To establish cause based on ineffective assistance of counsel, a petitioner must show that (1) counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense." *Loveland v. Hatcher*, 231 F.3d 640, 644 (9th Cir. 2000) (quoting *Strickland*, 466 U.S. at 687).

Harrell has not established cause here. While he alleges defense counsel was ineffective for failing to object to the purported instances of prosecutorial misconduct, he has not established that counsel's performance fell below an objective standard of reasonableness. In sub-claims two and four, Harrell alleges the prosecutor engaged in misconduct during closing arguments. Generally, a failure to object during closing arguments does not constitute deficient performance. *United States v. Necoechea*, 986

F.2d 1273, 1281 (9th Cir. 1993) ("Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct."); *see also Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013). Moreover, for the reasons discussed in section V(E)(2)(e) below, counsel's failure to object was not unreasonable because there was no prejudicial misconduct by the prosecutor.

Even assuming Harrell can establish cause, he has not established sufficient prejudice to excuse the procedurally barred claims. To do so, Harrell must show "actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). For the reasons discussed below in section V(E)(2)(e) of this Order, Harrell has failed to make such a showing as to the procedurally barred sub-claims because each of those sub-claims lack merit. Thus, he cannot show counsel's presumed "deficient performance prejudiced the defense." *Loveland*, 231 F.3d at 644.

Finally, Harrell has not established that failure to consider the claims would result in a "fundamental miscarriage of justice." The Supreme Court has limited the "miscarriage of justice" exception to petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327; *see McQuiggin v. Perkins*, 569 U.S. 383, 393–94 (2013); *Johnson v. Knowles*, 541 F.3d 933, 936–38 (9th Cir. 2008) ("The miscarriage of justice exception is limited to those extraordinary cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt."). Here, Harrell cannot establish a fundamental miscarriage of justice because, as discussed below in sections V(E)(2)(a), (b) and (d) of this Order, the defaulted sub-claims are without merit.

In sum, the state court barred sub-claims one, two and four of ground five for failure to raise a contemporaneous objection at trial. Respondent has satisfied their "ultimate burden" to show the state bar is an adequate and independent state procedural

ground. *Bennett*, 322 F.3d at 586. Thus, federal habeas review of sub-claims one, two and four is barred. *See Coleman*, 501 U.S. at 729–30. Harrell has not shown cause for the default. Moreover, for the reasons discussed below, the procedurally defaulted sub-claims lack merit and as such, Harrell has failed to establish prejudice or a miscarriage of justice sufficient to overcome the state procedural bar. *See Martinez*, 566 U.S. at 17–18; *Schlup*, 513 U.S. at 327; *Vickers*, 144 F.3d at 617.

### 2.   Merits

Despite the procedural default of sub-claims one, two and four, the Court will nonetheless review the merits of each sub-claim. Respondent then argues each of Harrell's prosecutorial misconduct claims should be denied because the state court's denial was neither contrary to, nor an unreasonable application of, clearly established law. *See* Resp't Mem. P& A. Supp. Answer, ECF No. 10-1 at 29–34. It is clearly established that a criminal defendant's due process rights are violated when a prosecutor's misconduct results in a trial that is "fundamentally unfair." *See Darden v. Wainwright*, 477 U.S. at 193; *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). To obtain federal habeas relief on this claim, Harrell must do more than demonstrate that the prosecutor's comments were improper. *Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005); *see also Darden*, 477 U.S. at 180–81. He must show they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden,* 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643); *accord Greer v. Miller*, 483 U.S. 756, 765 (1987); *Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir. 1996). If prosecutorial misconduct is established and it was constitutional error, the court must decide whether the constitutional error was harmless. *Thompson*, 74 F.3d at 1576–77.

### a.   Officer Okeson's Testimony

Petitioner contends his due process rights were violated when the prosecutor knowingly allowed San Diego Police Officer Okeson to testify "falsely" without

correcting him. *See* Pet., ECF No. 1 at 26–27. The last reasoned decision from the state court, to which this Court must look, is that of the California Court of Appeal. *See Ylst*, 501 U.S. at 805–06. After finding the claim was waived because defense counsel failed to object at trial, the appellate court went on to deny the claim on the merits, stating:

> One of the officers who responded to the stabbing, testified the police "found" the victim on the sidewalk near the entry of his apartment building. Harrell contends the officer's testimony was false or misleading because the police in fact called to the victim from outside his apartment building and "found" him when he exited the building. According to Harrell, the testimony prejudiced him because it corroborated the victim's accounting of the incident by suggesting Harrell stabbed him in front of the apartment building. Harrell asserts the prosecution had a duty to correct the testimony at issue. (*People v. Carrasco* (2014) 59 Cal.4th 924, 966 (*Carrasco*) ["'A prosecutor's presentation of knowingly false testimony [citation], or the failure to correct such testimony after it has been elicited [citation], violates a defendant's right to due process ....'"].)
>
> . . . .
>
> Even if we were to overlook forfeiture, the asserted error was not prejudicial. At trial, it was undisputed the victim returned to his apartment after the stabbing. The victim, for example, testified he escaped the confrontation and called 911 from his apartment. The physical evidence corroborates this testimony, as there was a trail of blood leading from outside the apartment building to the victim's apartment. Because all parties agreed the victim returned to the apartment after the stabbing, the location where the police and the victim later encountered one another is immaterial. It discloses nothing about where the stabbing occurred, nor whose version of the confrontation, if any, was correct. Therefore, the asserted misconduct was harmless.

Cal. Ct. App. Opinion, ECF No. 11-28 at 14–15.

The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law. At trial, Officer Okeson testified that he was called to the crime scene to collect evidence at about 12:30 a.m. Rep.'s Tr., ECF No. 11-13 at 966. When he got there, Detectives McCullough and Norse were already on the scene and Hodge had been taking to the hospital. *Id.* at 967–68. Okeson was tasked with collecting and documenting evidence. *Id.* at 966. Okeson testified that Hodge had been

3:21-cv-0255-RBM-AHG

"found" by the first officers to arrive at the scene on the sidewalk, near the entryway to the apartment building. *Id.* at 977, 981, 985. There was a pool of blood in that area, along with scissors, clothing, wrappers and bandages left behind by paramedics. *Id.* at 985. During his testimony, Okeson was shown photographs of the sidewalk area outside the apartment building door and he testified that Harrell had been "found" there. *Id.* at 981.

Harrell argues this testimony was false, the prosecutor knew it was false and his due process rights were violated by the failure to correct it. Petitioner points to the testimony Officers Aristide and Barrett, who both stated they had "found" Hodge coming down the stairs from his apartment. *Id.* at 930–31; *see also* Rep.'s Tr., ECF No. 11-14 at 1270–73. Harrell argues Okeson's testimony created a false impression that Hodge was stabbed in the area outside the apartment door. Pet., ECF No. 1 at 26–27. He further argues the photo depicting the pool of blood in that area was deceptive because Okeson's testimony made it appear that the blood was left there during the altercation when it was instead there because it was where medics had treated Hodge before transporting him to the hospital. *Id.*; *see also* Rep.'s Tr., ECF No. 11-14 at 1304. This discrepancy was prejudicial, Harrell argues, because it was inconsistent with Harrell's testimony and gave the jury the impression that the altercation took place right outside Hodge's apartment building. Pet., ECF No. 1 at 26–27.

When a prosecutor obtains a conviction using testimony which she knows or should know is perjured, the conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. *See United States v. Agurs*, 427 U.S. 97, 103 (1976). The same is true when the prosecutor, although not soliciting false evidence, allows it to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To establish a due process violation based on the government's use of false or misleading testimony, a petitioner must show that "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003). Materiality is demonstrated when there is a

"reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103; *see also Giglio v. United States*, 405 U.S. 150, 154 (1972); *Napue*, 360 U.S. at 271–72.

The mere fact that Okeson's testimony differed from the testimony of Officers Aristide and Barrett does not establish a knowing presentation of perjured testimony by the prosecutor. The presentation of a conflicting version of events does not establish the prosecutor's knowing use of perjured testimony. *See Zuno-Arce*, 44 F.3d at 1423 (finding no evidence of prosecutorial misconduct where discrepancies in testimony could as easily flow from errors in recollection as from lies); *see also Geston*, 299 F.3d at 1135; *Tayborn v. Scott*, 251 F.3d 1125, 1131 (7th Cir. 2001) (stating mere inconsistencies in the testimony of a government witness fall short of establishing that the government knowingly used false testimony). Petitioner must establish a factual basis for attributing knowledge that the testimony was perjured to the government. *See Morales v. Woodford*, 388 F.3d 1159, 1179 (9th Cir. 2004). Here, Harrell has failed to allege specific facts to show the prosecutor knew Okeson was perjuring himself, as opposed to Okeson merely recalling the details of that evening's events inaccurately. Okeson testified that he was not present when Hodge was first contacted by Officers Aristide and Barrett. Rep.'s Tr., ECF No. 11-13 at 967. Indeed, Okeson stated that it was Aristide and Barrett who told him they encountered Hodge at the bottom of the stairs outside the building (*id.* at 967), while Aristide and Barrett both testified at trial that they first saw Hodge coming down the stairs from his apartment. *Id.* at 931; *see also* Rep.'s Tr., ECF No. 11-14 at 1272–33. This suggests a simple mistake as opposed to a knowing presentation of perjured testimony.

Even assuming the prosecutor knew Okeson was mistaken when he testified as to where Hodge was found by first responders, Harrell would not be entitled to relief. The appellate court reasonably concluded the evidence was immaterial. As noted above, Harrell admits the prosecutor also elicited testimony of Officers Aristide and Barrett—the officers who first encountered Hodge coming down the stairs. Before Okeson was called

as a witness, Officer Aristide had already testified that upon arriving at the scene, he found Officers Barrett and Rojas already there looking for the victim. Rep.'s Tr., ECF No. 11-12 at 927, 929. Aristide stated the officers noticed a trail of blood going up to the door. *Id.* at 930. Aristide and Barrett called up to the apartment for Hodge to come out; he eventually emerged and came downstairs. *Id.* at 932, 942.

After Aristide and Okeson's testimony, the prosecution called Officer Barrett who, unlike Okeson, was also present when Hodge was found. Officer Barrett's testimony was consistent with Aristide's—he arrived at the scene and did not see Hodge outside. Rep.'s Tr., ECF No. 11-13 at 1267. Barrett stated that he and Officer Aristide called out and Hodge came down the stairs from his apartment, covered in blood. Rep.'s Tr., ECF No. 11-13 at 1269, 1272–73. In addition to this testimony, the jury also saw footage from Officer Barrett's body camera, on which Barrett could be heard telling Hodge to "come on out" of the apartment. Clerk's Tr., ECF No. 11-1 at 96.

The prosecutor never sought to capitalize on the inconsistent testimony provided by Okeson. Indeed, during closing arguments, she referred to Hodge "coming out" of his apartment after police arrived, as it was depicted on the bodycam footage. Rep.'s Tr., ECF No. 11-34 at 3651. She stated, "When the police get there, their number one concern is for the victim, so you can see on the body-worn cameras, you can see some of that initial blood before he comes out." *Id.* Given the testimony of Officers Aristide and Barrett and the prosecutor's statements during closing argument, Harrell has failed to show a knowing presentation of perjured testimony. And even assuming it was false, the state court's conclusion that the evidence was immaterial was not unreasonable. The location where Hodge was "found" by responding officers—whether it was coming down the stairs from his apartment or at the bottom of the stairs on the sidewalk—was not central to the defense and there is no "reasonable likelihood" that, had Okeson testified consistently with Officers Barrett and Aristide, the result would have been different. *See Agurs*, 427 U.S. at 103; *see also Giglio*, 405 U.S. at 154.

/ / /

Based on the above, the state appellate court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 412–13; 28 U.S.C. §2254(d)(1). In addition, Harrell has failed to show the court's decision was based on an unreasonable determination of the facts in light of the evidence presented at trial. *See Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2). He is not entitled to relief as to this sub-claim.

### b.    Misstatements of Fact

Next, Harrell argues that the prosecutor improperly misstated the evidence, amounting to prosecutorial misconduct in violation of due process. Pet., ECF No. 1 at 27–28. Specifically, he alleges that during closing argument, the prosecutor mischaracterized the testimony of witness, Gustavo Figueroa. *Id.* He also argues the prosecutor improperly argued that during his interview with police, it was Harrell who first brought up the issue of "murder." *Id.*

### (1)    Background

During trial, Figueroa testified that he was driving by the area at "around 9:00 or 9:30 p.m." when he saw a confrontation between two men, one of whom had a bicycle. Rep.'s Tr., ECF No. 11-16 at 1831, 1840. Figueroa testified that he did not see either man hit the other but the two appeared to be "squaring off" while yelling at each other. *Id.* at 1839. Figueroa testified he did not see blood on either man, but it was "really dark" that night and "the street light was behind a tree so there was a lot of shadowing." *Id.*

During closing, the prosecutor discussed Figueroa's testimony as follows:

> [Figueroa's] work shift was from four to midnight. When he testified he said it was during his lunch break, which would make sense at 8:30 which is what he testified to, and that could easily have been at the time of one of the earlier arguments between these two. [¶] What is pretty—seems to be pretty—makes sense with what he testified to is what the evidence is. It certainly wasn't after a fight. He would have noticed as he looked at them that Mackel Hodge was bleeding intensely down his body. So take what he said and see how it fits into the evidence as you go through.

Rep.'s Tr., ECF No. 11-34 at 3647–48.

39

At another point in her closing argument, the prosecutor referred to Harrell's interview with police that took place on July 20, 2017, the day after the incident. *See* Clerk's Tr., ECF No. 11-1 at 174–245. She stated, in part:

> [T]he defendant in this case. [sic] Thought he killed [Hodge]. And it's interesting because in the interview, the recorded interview, he's the one that brings up murder first. He's not told—he's told he's stabbed but he's not said anything else about how much, how any times. He brings it up in the interview. Why do you think he brings it up? Because he thought he killed him. He went back that next day when the evidence was gone. He didn't think he'd get caught. He didn't think the victim could talk. He not only brings it up once, but he continues to bring it up in that interview. He's asking them, "Am I being charged with murder?" Then they say, "He's still alive." He starts with attempt murder. They tell him he's being charged with assault, and he goes back to murder. Why is that? Because he thinks he killed him. He meant to kill him.

Rep.'s Tr., ECF No. 11-34 at 3678–79.

### (2)    State Court Opinion

In the last reasoned state court decision, the California Court of Appeal found this claim was procedurally barred but went on to deny it on the merits, as well, stating:

> Were we to address Harrell's argument on the merits, we would find no reversible error. "'Prosecuting attorneys are allowed "a wide range of descriptive comment" and their ""'argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.'"""' (*People v. Jackson* (2016) 1 Cal.5th 269, 349.) The prosecutor's statement that the driver-witness may have viewed an earlier interaction between the men is a reasonable inference from the evidence, given that the driver-witness testified he thought he took his lunch break at 9:00 or 9:30 p.m. and Harrell testified the confrontation occurred later, at "ten something" p.m. Further, the driver-witness testified he did not see anyone bleeding, whereas the victim testified he was bleeding during the confrontation. Based on this evidence, the prosecutor's statement was permissible. [Footnote 5: The prosecutor also stated the driver-witness testified his lunch break was at 8:30 p.m. Although this comment misstated the evidence, it was not material or prejudicial. Had the prosecution not made this statement, the best-case scenario for the defense would have been that the jury would have believed

3:21-cv-0255-RBM-AHG

the driver-witness viewed the confrontation. However, the driver-witness's testimony was not all helpful to the defense, as Harrell claims. As noted *ante*, he testified he saw no physical contact between the men and the men stood eight to 10 feet apart—evidence from which a jury reasonably could have concluded Harrell's use of force was unreasonable.]

Similarly, we discern no prejudicial error from the prosecutor's statement that it was Harrell who first mentioned he may have killed the victim. As Harrell correctly notes, the police first referenced the possibility the victim may have died when they told Harrell, "[w]e know that you weren't trying to kill this guy...." However, the jury would not likely have drawn negative inferences against Harrell even if it was misled to believe Harrell had broached the topic first. The police had just informed Harrell the victim had been stabbed, a disclosure which naturally would result in further dialogue as to whether the victim was alive. Further, whether it was Harrell or the police who raised the possibility of the victim's possible death was irrelevant to the key issues at trial—i.e., which man instigated the confrontation and whether Harrell properly acted in self-defense. On this record, we discern no prejudice from the alleged misconduct.

Cal. Ct. App. Opinion, ECF No. 11-28 at 16–17.

### (3)   Discussion

It is clearly established that where a habeas claim of prosecutorial misconduct during closing argument is alleged, the likely effects of the prosecutor's statements are examined "in the context in which they were made to determine 'whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir. 2002) (quoting *Darden*, 477 U.S. at 181)). "A court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly*, 416 U.S. at 647. During closing arguments, a prosecutor is allowed a "wide latitude" and can argue reasonable inferences from the evidence. *Fields v. Brown*, 431 F.3d 1186, 1206 (9th Cir. 2005); *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989). However, it is improper for a prosecutor to make

41

statements or inferences to the jury that she knows to be false or has a strong reason to doubt. *United States v. Reyes*, 577 F.3d 1069, 1077 (9th Cir. 2009). Determining whether prosecutorial misconduct occurred during closing argument requires an examination of the entire proceedings so that the prosecutor's remarks may be placed in proper context. *Boyde v. California*, 494 U.S. 370, 384–85 (1990); *Allen v. Woodford*, 395 F.3d 979, 1010 (9th Cir. 2005). Prosecutorial misconduct is subject to harmless error analysis. *Brecht*, 507 U.S. at 638. Habeas relief is only granted when the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637

The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law. As for Figueroa, he testified that he was working a shift from 4:00 to midnight and he typically took his lunch anytime from 8:00 p.m. to 9:30 p.m. Rep.'s Tr., vol. 10, ECF No. 11-16 at 1832. He stated his lunch typically lasted anywhere from thirty minutes to an hour. *Id.* Figueroa testified that the evening of the incident, "I think it was around 9:00, 9:30" that he went for lunch. *Id.* As he was driving back to work from McDonald's, Figueroa saw two men arguing. *Id.* at 1835. One man was straddling a bike and the other was about eight to ten feet away and was "squaring off," with both fists at chest height. *Id.* at 1836. He heard yelling but could not make out what was being said. *Id.* at 1837. Figueroa testified that he did not see any blood but acknowledged it was very dark outside. *Id.* at 1839. Nor did he see any contact between the two individuals. *Id.*

Harrell argues the prosecutor misstated the time Figueroa testified he took his lunch that evening during closing. It is true the prosecutor stated "[Figuerora] said it was during his lunch break, which would make sense at 8:30 which is what he testified to," when Figueroa actually testified it was likely between 9:00 and 9:30. Rep.'s Tr., ECF No. 11-34 at 3647–48. A misstatement of fact in a prosecutor's closing argument, however, will not violate due process if it is minor or ambiguous and the jury was instructed that arguments by attorneys are not evidence. *Trillo v. Biter*, 769 F.3d 995, 999–1000 (9th Cir. 2014). To the extent the prosecutor's comment was inconsistent with Figueroa's

testimony that it was "around 9:00, 9:30," such an isolated misstatement is insufficient to render Harrell's trial fundamentally unfair. The jury was clearly instructed that they were the ultimate finders of fact and that nothing the attorneys said during opening or closing argument was evidence. *See* Rep.'s Tr., ECF No. 11-34 at 3608; *see also* Clerk's Tr., ECF No. 11-4 at 425; CALCRIM No. 222.

In addition, to the extent the prosecutor's statement suggested Figueroa had witnessed Harrell and Hodge arguing during an encounter before the stabbing occurred (*see* Rep.'s Tr., ECF No. 11-34 at 3648–49), it did not amount to misconduct in violation of due process. A prosecutor is free during closing to make reasonable inferences from the evidence presented. *Menendez v. Terhune*, 422 F.3d 1012, 1037 (9th Cir. 2005). While it was Harrell's theory that Figueroa saw the beginning of the altercation on the street, the prosecutor's suggestion of a different theory was not misconduct. Given the ambiguity of Figueroa's testimony regarding the timing, his testimony was not inconsistent with either theory. The prosecutor's argument therefore does not constitute a misstatement of fact. Moreover, in light of the "wide latitude" granted counsel to argue reasonable inferences based on the evidence, there was no misconduct. *Fields*, 431 F.3d at 1206.

Lastly, Harrell has failed to show the state court unreasonably denied his claim that the prosecutor committed misconduct when she mischaracterized Harrell's statements to police about "murder." Harrell contends the prosecutor impermissibly stated during closing that "in the interview, the recorded interview, [Harrell's] the one that brings up murder first." Rep.'s Tr., ECF No. 11-34 at 3678–79. As the appellate court found, the prosecutor's statement was not entirely accurate. During his interview with law enforcement, Harrell initially denied stabbing Hodge, claiming he merely swung the knife at Hodge. Clerk's Tr., ECF No. 11-1 at 206. Detectives pressed him on whether he stabbed Hodge and the following exchange occurred:

> Det. M:      I understand. But you're swinging the knife. The knife is in your hand while you're swinging to get the hands off, right?

| | | |
|---|---|---|
| 1 | Derek: | Man. |
| 2 | Det. M: | And that's what I'm asking. |
| 3 | | |
| 4 | Derek: | Put it this way, man, you know what? |
| 5 | Det. E: | Derek—Derek… |
| 6 | Derek: | I hope he—I didn't see him—I didn't stab him. |
| 7 | | |
| 8 | Det. E: | Derek, listen… |
| 9 | Derek: | So if he got stabbed—I hope he's not hurt and I hope, 'cause |
| 10 | | that's—I—that's not my intentions, bro. |
| 11 | Det. M: | Okay. |
| 12 | Derek: | I'm just—was trying to, like, I mean I—I was—to be honest |
| 13 | | with you, I was trying to show him that I'm not afraid of him |
| 14 | | but I was kind of afraid of him 'cause he's—he was, like, I've |
| | | never seen him like that. |
| 15 | | |
| 16 | Det. M: | Okay. Derek, it's truth time. Like my partner was saying, okay, |
| | | listen. He was stabbed. Okay? |
| 17 | | |
| 18 | Derek: | Is he hurt? |
| 19 | Det. M: | What… |
| 20 | Det. E: | You tell us. |
| 21 | | |
| 22 | Det. M: | You tell us. |
| 23 | Derek: | I don't know, man. Listen… |
| 24 | Det. M: | You were there. |
| 25 | | |
| 26 | Det. E. | Derek, listen to me right now. We know that you didn't—you |
| 27 | | weren't trying to hurt this guy. We know that you weren't |
| | | trying to kill this guy. We know that you guys had an |
| 28 | | altercation and you were… |

44

Derek:        He's dead?

Det. M:       No.

Det. E:       No. Just listen.

Derek:        Oh.

Clerk's Tr., ECF No. 11-1 at 206–07. Shortly after this line of questioning, Harrell asked detectives again if he "killed him" and the detectives responded, "no." *Id.* at 212. Later in the interview, Harrell asked if he was being charged with "murder." *Id.* at 221. The detective replied, "No, he's alive." *Id.* As the interview continued, Harrell again asked detectives if he was being charged with murder. *Id.* at 229, 231.

Based on the transcript of the interview, it appears the prosecutor at least partially misspoke. While she was correct that Harrell was the first person to mention the term "murder," Harrell was not the first to bring up the subject of Hodge's possible death. That was first raised by one of the detectives in the exchange above, when he suggested Harrell "[wasn't] trying to kill this guy." *Id.* at 206. As discussed above, however, not every misstatement during closing argument amounts to misconduct. Indeed, a "court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly*, 416 U.S. at 647. In her argument, the prosecutor suggested that Harrell's repeated references to murder or attempted murder charges showed he intended to kill Hodge. This may have been a stretch but the prosecutor's "misstatement has earmarks of inadvertent mistake, not misconduct." *United States v. Carrillo*, 16 F.3d 1046, 1050 (9th Cir. 1994); *Lloyd*, 807 F.3d at 1168. Moreover, the prosecutor's ambiguous statement was an isolated comment during a lengthy a closing argument (spanning 45 pages of the trial transcript) at the end of a trial that had lasted over two weeks. *See* generally, Rep.'s Tr., ECF No. 11-34 at 3638–83. Taken in context, this isolated, ambiguous statement is insufficient to render Harrell's trial fundamentally unfair. *See Donnelly*, 416 U.S. at 645 (concluding the

prosecutor did not violate the petitioner's constitutional rights where misconduct "was but one moment in an extended trial"); *Trillo*, 769 F.3d at 1002 (finding the petitioner was not entitled to habeas corpus relief when "[t]he erroneous unrectified comment did not play a prominent role in [Petitioner's] trial, but instead was a single statement during a closing argument that took twenty pages of transcript after a long criminal trial.").

In any event, as noted above, the trial court specifically instructed the jury that it was the ultimate judge of the facts, and that attorney statements were not evidence. *See* Rep.'s Tr., ECF No. 11-34 at 3608; *see also* Clerk's Tr., ECF No. 11-4 at 425; CALCRIM No. 222. "[A]rguments of counsel generally carry less weight with a jury than do instructions from the court." *Boyde*, 494 U.S. at 384. And Harrell has provided "no reason to believe that the jury in this case was incapable of obeying the [court's] instructions." *Greer*, 483 U.S. at 766 n.8; *see also Drayden v. White*, 232 F.3d 704, 713-14 (9th Cir. 2000) (finding no due process violation where jury was similarly instructed). The jury heard the recording of Harrell's interview with detectives[4] and it was specifically instructed it was for them to evaluate the evidence. Thus, the prosecutor's misstatement was not so prejudicial as to render Petitioner's trial fundamentally unfair.

The state court's denial of the claim was not an unreasonable application of clearly established law or contrary to it. *See Williams*, 529 U.S. at 407–08; *see also* 28 U.S.C. § 2254(d)(1). Furthermore, the state court's decision was not based on an unreasonable determination of the facts. Harrell is not entitled to relief as to this sub-claim.

/ / /

/ / /

/ / /

/ / /

---

[4] It appears the jury may have listened to at least some of the the recording. On the first day of deliberations, jurors sent a note requesting an "amplifier speaker for the computer to better hear recorded evidence." Clerk's Tr., ECF No. 11-4 at 446.

c.      Misstatements of Law

Next, Harrell argues the prosecutor misstated the law and shifted the burden of proof during closing arguments, amounting to misconduct in violation of his due process rights. Pet., ECF No. 1 at 29. Specifically, he contends the prosecutor implied his failure to effectively impeach Hodge during cross-examination suggested that Hodge was telling the truth and Harrell was not. *Id.* He argues this amounted to a "shifting of the burden of proof." *Id.* Unlike Harrell's other prosecutorial misconduct claims, this sub-claim was not procedurally barred by the appellate court. The Court of Appeal addressed the merits in the last reasoned decision by a state court and denied relief, stating:

> During closing arguments, the prosecutor summarized several pretrial statements made by the victim pertaining to the confrontation, including his call to 911, his police interviews, and his preliminary hearing testimony. After summarizing these statements, the prosecutor stated: "[The victim] testified pretty much the exact same [at trial] as he did at the preliminary hearing ... because if he would have testified different [sic], you would have heard a lot of impeachment. [T]hat transcript would have been up there and he would have been reading from it, and [defense counsel] would have been asking quite a few questions." Harrell claims these statements were improper because they purported to shift the prosecution's burden of proof to Harrell. (*People v. Cortez* (2016) 63 Cal.4th 101, 130 ["'[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements [citation].'"].) We disagree.

> Standing in isolation, the statements themselves did not mention the burden of proof. Nor did the statements imply the defense had a duty to produce affirmative evidence of innocence. Instead, they conveyed only that the defense likely would have impeached the victim if his pretrial statements and trial testimony were inconsistent with one another. There was nothing improper with the prosecutor's statements.

> Harrell's argument is even less convincing when the statements are read in context. Throughout closing arguments, the prosecutor correctly informed the jury the prosecution carried the burden of proof. At the outset of the argument, for instance, she stated, "I have the burden of proof ...." She later said: "[M]y burden of proof in the case[ is] beyond a reasonable doubt.... It's always beyond a reasonable doubt." When discussing the

47

attempted murder charge, she again stated the correct burden of proof: "The attempt murder. There's two things that I have to prove beyond a reasonable doubt."

Based on the foregoing, we conclude there is no reasonable likelihood the jury would have misunderstood the prosecutor's statements in the manner Harrell contends.

Cal. Ct. App. Opinion, ECF No. 11-32 at 18–19.

The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law. First, contrary to Harrell's claim, the prosecutor did not misstate the law; rather her reference to the failure to impeach Hodge's testimony was a reference to the weakness of the defense's case. The Ninth Circuit faced a similar issue in *Demirdjian v. Gipson*, 832 F.3d 1060 (9th Cir. 2016). There, the defendant argued counsel should have objected when a prosecutor's arguments in closing essentially attacked the weakness of the defense case and invited counsel to provide admissible evidence to support it. *Demirdjian*, 832 F.3d at 1071. The court held the comment on the failure to present exculpatory evidence was permissible because the burden of proof was neither expressly nor implicitly shifted and the prosecutor expressly told the jury that the government bore the burden of proof. *Id*. Likewise, here the prosecutor merely pointed out defense counsel's failure to impeach Hodge's testimony on certain matters. And as in *Demirdjian*, the prosecutor did not misstate her burden. Moreover, she repeatedly stated that the burden was hers and that she must prove her case beyond a reasonable doubt. Rep.'s Tr., ECF No. 11-34 at 3638, 3639, 3641, 3644, 3645, 3654, 3664, 3665. Indeed, she referred to her burden at least ten times during closing. Thus, the state court's denial of this claim was not unreasonable or contrary to clearly established federal law.

Further, to the extent Harrell argues the prosecutor's comment amounted to burden-shifting, it fails for a similar reason. The Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that

such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). Although a prosecutor's direct comment about a defendant's failure to testify always violates *Griffin*, a prosecutor's indirect comment violates *Griffin* only "if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987); *see also United States v. Hasting*, 461 U.S. 499, 515 (1983) (Stevens, J., concurring) (noting that *Griffin* did not "cut back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case"); *Lockett v. Ohio*, 438 U.S. 586, 595 (1978) (holding a prosecutor's closing remarks regarding the "unrefuted" and "uncontradicted" evidence did not violate the defendant's constitutional rights).

Here, the prosecutor commented on a failure to effectively impeach Hodge's testimony. As discussed above, courts have distinguished "between permissible 'comments about the lack of explanation provided by the defense' and impermissible 'comments about the lack of explanation furnished by the defendant.'" *Demirdjian*, 832 F.3d at 1067 (9th Cir. 2016) (quoting *United States v. Mayans*, 17 F.3d 1174, 1185 (9th Cir. 1994)); *see also Cook v. Schriro*, 538 F.3d 1000, 1020–21 (9th Cir. 2008); *United States v. Mende*, 43 F.3d 1298, 1301 (9th Cir. 1995) ("There is a distinction between a comment on the defense's failure to present exculpatory evidence as opposed to a comment on the defendant's failure to testify."). The state court's conclusion that the prosecutor's comment did not amount to burden-shifting was therefore not unreasonable.

Based on the foregoing, the state court's denial of this sub-claim was neither contrary to, nor an unreasonable application of, clearly established law. *See Williams*, 529 U.S. at 407–08; *see also* 28 U.S.C. § 2254(d)(1). Nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial. *See Miller-El*, 537 U.S. at 340; *see also* 28 U.S.C. § 2254(d)(2). Harrell is not entitled to relief as to this sub-claim.

/ / /

d.      Impugning Defense Counsel

In his next sub-claim, Harrell contends the prosecutor committed misconduct when she impugned defense counsel during closing argument. Specifically, he alleges that right after defense counsel finished his closing argument, the prosecutor began her argument by immediately disparaging defense counsel. The trial transcript reflects the following exchange:

> Mr. Bollinger [defense counsel]: Walk through that evidence. Walk through that evidence. It's all there. There is no reason for Mr. Harrell's DNA to be on the handle of that knife. There is no reason for that blood trail to be there or that beer can to be there if what Mr. Harrell [sic] tells you is true. The injuries. One inch to one-and-a-half inch cut on the neck that is superficial and that's what happened when somebody came up from behind and slit his throat? No, ladies and gentlemen, Mr. Hodge was out of his mind and out of control. That's why he's making these accusations and that's why Mr. Harrell had to defend himself. Thank you.

> The Court:   Mr. Miss Reedy, rebuttal.

> Ms. Reedy [prosecutor]:  Yes. Thank you. In law school they teach us a couple of things. One is if the facts are on your side, argue the facts. If the law's on your side, argue the law, and if you have neither, blame someone else.

*See* Rep.'s Tr., ECF No. 11-34 at 3699–3700.

The court of appeal reviewed the claim and denied it, stating:

> [T]he prosecutor's statements were not problematic. "'A prosecutor commits misconduct if he or she attacks the integrity of defense counsel, or casts aspersions on defense counsel.'" (*Redd*, supra, 48 Cal.4th at p. 734.) However, "'[t]he prosecutor has wide latitude in describing the deficiencies in opposing counsel's tactics and factual account.'" (*Id*. at p. 735.) Here, the prosecution "'simply used colorful language to permissibly criticize counsel's tactical approach'" of attributing blame for the confrontation on the victim. (*People v. Huggins* (2006) 38 Cal.4th 175, 207.) "'These comments were explicitly aimed at counsel's closing argument and statement[s], rather than at him personally. We see no improper attack on counsel's integrity.'" (*Ibid*.; see *People v. Powell* (2018) 6 Cal.5th 136, 184

50

[prosecutor's statement that defense counsel was "trying to shift the blame" was a "proper comment"].)

Cal. Ct. App. Opinion, ECF No. 11-28 at 19–20.

The Supreme Court has held that a prosecutor's improper comments violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. 37. 47–48 (2012) (per curiam) (quoting *Darden v. Wainright*, 477 U.S. 168, 181–83 (1986)); *see Sassounian v. Roe*, 230 F.3d 1097, 1106 (9th Cir. 2000). To determine whether a prosecutor's remarks rendered a trial fundamentally unfair, the comments must be analyzed in the context of the entire proceeding. *Boyde v. California*, 494 U.S. at 385; *Darden*, 477 U.S. at 179–82; *see also Hein v. Sullivan*, 601 F.3d 897, 912–13 (9th Cir. 2010) ("In determining whether a comment rendered a trial constitutionally unfair, factors we may consider are whether the comment misstated the evidence, whether the judge admonished the jury to disregard the comment, whether the comment was invited by defense counsel in its summation, whether defense counsel had an adequate opportunity to rebut the comment, the prominence of the comment in the context of the entire trial and the weight of the evidence.").

Furthermore, attorneys are "given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." *Ceja v. Stewart*, 97 F.3d 1246, 1253–54 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). A reviewing court should consider challenged remarks in light of the role of closing arguments at trial. "Because 'improvisation frequently results in syntax left imperfect and meaning less than crystal clear,' 'a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.'" *Williams v. Borg*, 139 F.3d 737, 744 (9th Cir. 1998) (quoting *Donnelly*, 416 U.S. at 646–47).

3:21-cv-0255-RBM-AHG

1      When considered in context and in its entirety, the prosecutor's remark about the

2  failure to effectively impeach Hodge did not cast aspersions on defense counsel. Rather,

3  the remark was directed to an anticipated defense argument based on the evidence. The

4  prosecutor did not disparage defense counsel, she commented on the weakness of the

5  defense's case. As such, the prosecutor's comment did not render Harrell's case

6  fundamentally unfair. *See United States v. Ruiz*, 710 F.3d 1077, 1086 (9th Cir. 2013)

7  (concluding a prosecutor's characterization of the defense's case as "smoke and mirrors"

8  was not improper where comment was directed to strength of the case and was not an ad

9  hominem attack on defense counsel); *Williams*, 139 F.3d at 745 (stating that a

10  prosecutor's characterization of defense counsel's argument as "trash" was not improper

11  because "[h]e did not say the man was "trash"; he said the argument was"); *United States*

12  *v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997) ("Criticism of defense theories and

13  tactics is a proper subject of closing argument").

14      The state court's denial of the claim was therefore neither contrary to, nor an

15  unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at

16  407–08; *see also* 28 U.S.C. § 2254(d)(1). Moreover, Harrell has failed to show the

17  decision was based on an unreasonable determination of the facts in light of the evidence

18  presented at trial. *See Miller-El*, 537 U.S. at 340; *see also* 28 U.S.C. § 2254(d)(2).

19          e.    Cumulative Impact of Prosecutorial Misconduct

20      Finally, Harrell contends his due process rights were violated by the cumulative

21  pattern of prosecutorial misconduct. Pet., ECF No. 1 at 27. Harrell raised this claim in

22  his petition for writ of habeas corpus filed with the California Supreme Court. Cal. Sup.

23  Ct. Pet., ECF No. 11-33 at 21. While the appellate court did not specifically address

24  Harrell's argument regarding cumulative impact of the prosecutor's purported

25  misconduct, it did deny his claim pertaining to the cumulative impact of all of his claims

26  of constitutional error. *See* Cal. Ct. App. Opinion, ECF No. 11-28 at 36. The court

27  found that even considering all the alleged errors collectively, they "were not

28  significant" and therefore Harrell was "not denied his right to a fair trial." *Id.* Thus, in

denying the overarching claim of cumulative error, it implicitly rejected Harrell's more narrow argument.

The state court's denial was not unreasonable or contrary to clearly established law. In evaluating cumulative effect of prosecutorial misconduct claims, the Court must "consider whether the cumulative error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Hein*, 601 F.3d at 917 (citing *Donnelly*, 416 U.S. at 643). But prosecutorial misconduct which rises to the level of a due process violation may provide the grounds for granting a habeas petition only if that misconduct was so prejudicial it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637, *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004). To the extent the prosecutor made misstatements during closing argument they were minor and the jury was properly instructed that argument was not evidence. For the reasons discussed above, the alleged errors, even when considered together, do not amount to a denial of due process, much less actual prejudice under *Brecht*. *See Trillo*, 769 F.3d at 1001–02 (concluding that although the prosecutor's statement during closing argument was improper, it was harmless under *Brecht* because it was a single statement during a long trial and there was strong evidence of guilt); *see also Mays v. Clark*, 807 F.3d 968, 980 (9th Cir. 2015) (stating that under *Brecht*, "relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict'").

Therefore, the state court's denial of the claim was not contrary to clearly established federal law or an unreasonable application of it. *See Williams*, 529 U.S. at 407–08; *see also* 28 U.S.C. § 2254(d)(1). Furthermore, it was not based on an unreasonable determination of the facts presented to the state court. *See Miller-El*, 537 U.S. at 340; *see also* 28 U.S.C. § 2254(d)(2).

/ / /

/ / /

1

f.      Ineffective Assistance of Counsel for Failing to Object

2      Finally, while he does not raise it as a separate claim, Harrell contends that defense

3  counsel's failure to object to instances of prosecutorial misconduct raised in sub-claims

4  one, two and four amounted to ineffective assistance of counsel.[5] Pet., ECF No. 1 at 27,

5  29. The last reasoned decision from the appellate court denied the claim as follows:

6         We reject this claim. As previously noted, most of the objections trial
        counsel did not assert would have been meritless. (*People v. Kipp* (1998) 18
7       Cal.4th 349, 377 ["'[F]ailure to assert a meritless defense does not
        demonstrate ineffective assistance of counsel."].) As further noted, it is not
8       reasonably probable the outcome of the proceeding would have differed had
        trial counsel asserted the remainder of the objections Harrell has identified.
9       (*People v. Caro* (2019) 7 Cal.5th 463, 514–515.)

10

11

12  Cal. Ct. App. Opinion, ECF No. 11-28 at 35–36.

13      To establish ineffective assistance of counsel under clearly established law, Harrell

14  must demonstrate both that counsel's performance was deficient and that he was

15  prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687. On habeas review,

16  "[t]he pivotal question is whether the state court's application of the Strickland standard

17  was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "The merits of the

18  underlying claim 'control the resolution of the *Strickland* claim because trial counsel

19  cannot have been ineffective for failing to raise a meritless objection.'" *Zapata*, 788 F.3d

20  at 1112 (quoting *Juan H.*, 408 F.3d at 1273). Here, for the reasons discussed above,

21  Harrell's prosecutorial misconduct claims lack merit and as such, defense counsel's

22  failure to object does not constitute deficient performance or prejudice because objection

23  would have been futile.

24  / / /

25

26  [5] Harrell raised this claim in the California Court of Appeal, the California Supreme

27  Court and in his federal petition. See ECF Nos. 11-26 at 102–05. Respondent, however,
    does not address Harrell's ineffective assistance of counsel claim on the merits. *See*

28  *generally*, Resp't Mem. P. & A. Supp. Answer, ECF No. 10-1.

Because the state court reasonably concluded there was no prosecutorial misconduct, it was not unreasonable to further conclude that counsel was not deficient in deciding not to object because any objection would have been overruled. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance.") And for this same reason, Harrell has failed to establish cause and prejudice to overcome the procedural default of sub-claims one, two and four. *See Loveland*, 231 F.3d at 644 (stating that to establish cause to overcome procedural default based on ineffective assistance of counsel, a petitioner must satisfy the *Strickland* standard).

### 3.   Conclusion

For the foregoing reasons, sub-claims one, two, and four are procedurally defaulted and therefore barred from federal habeas review. Harrell has failed to establish ineffective assistance of counsel for failure to object because the claims are without merit. For the same reason, he cannot show cause and prejudice or manifest injustice sufficient to overcome the default. *See Martinez*, 566 U.S. at 17–18; *Schlup*, 513 U.S. at 327; *Vickers*, 144 F.3d at 617. In addition, having reviewed all of Harrell's prosecutorial misconduct sub-claims on the merits, the Court has further determined the state court's denial of Harrell's claims was neither contrary to, nor an unreasonable application of, clearly established law. *See Williams*, 423 U.S. at 412–13. The state court's adjudication did not involve an "unreasonable determination of the facts in light of the evidence presented in the state court proceedings," because Petitioner has not argued, much less demonstrated, that the state court's factual findings were objectively unreasonable. *See Miller-El*, 537 U.S. at 340. Claim five is therefore denied.

### F.   *Judicial Misconduct*

In ground six, Harrell alleges several instances of judicial bias and/or misconduct he contends rendered his trial fundamentally unfair in violation of the Due Process Clause. Pet., ECF No. 1 at 30–34. Respondent argues the claims must be dismissed

/ / /

because they are procedurally barred from review and, in the alternative, they fail on the merits. Resp't Mem. P. & A. Supp. Answer, ECF No. 10-1 at 34–48.

### 1. Procedural Default

Harrell raised his judicial misconduct claims in his petition for writ of habeas corpus to the California Supreme Court, which denied the petition without comment or citation. *See* Cal. Sup. Ct. Docket, ECF No. 11-33. This Court therefore looks through to the last reasoned decision. *See Ylst*, 501 U.S. at 805–06. The appellate court first found Harrell's judicial misconduct claims were procedurally barred from appellate review because he failed to object specifically on judicial misconduct grounds at trial. *See* Cal. Ct. App. Opinion, ECF No. 11-28 at 21–22.

Respondent again contends California's contemporaneous objection rule is adequate and independent of federal law. *See* Respt's Mem. P. & A. Supp. Answer, ECF No. 10-1 at 36–37. Under California law, judicial misconduct claims are generally not preserved for appellate review if no objections were made on those grounds at trial. *See People v. Snow*, 30 Cal. 4th 43, 77–78 (Cal. 2003); *People v. Fudge*, 7 Cal. 4th at p. 1108; *People v. Anderson*, 52 Cal.3d 453, 468 (Cal. 1990.) Thus, the burden shifts to Petitioner to assert "specific factual allegations" demonstrating the inadequacy of the rule. *Bennett*, 322 F.3d at 586. For his part, Harrell provides no response as to the independence or adequacy of the procedural bar asserted by Respondent (*see* generally, Traverse, ECF No. 17) and therefore he has failed to meet his burden.[6] *See King v. LaMarque*, 464 F.3d 963, 967 (9th Cir. 2006) ("*Bennett* requires the petitioner to 'place

---

[6] In some circumstances, a defendant's failure to object specifically on judicial misconduct/bias grounds does not preclude review under California law—such as when an objection and an admonition could not cure the prejudice caused by the purported misconduct, or when objecting would be futile. *People v. Terry*, 2 Cal. 3d 362, 398 (Cal. 1970); *see also People v. Perkins*, 109 Cal. App. 4th 1562, 1567 (Cal. Ct. App. 2003); *People v. Abbaszadeh*, 106 Cal.App.4th 642, 647–50 (Cal. Ct. App. 2003) (reviewing judicial misconduct claim where objection at trial would have been futile). Harrell, however, has not alleged such circumstances were present here.

[the procedural default] defense in issue' to shift the burden back to the government.")
And as discussed above, the Ninth Circuit has determined that California's
contemporaneous objection rule is "an independent and adequate state procedural rule"
that bars federal habeas review of a claim. *See Zapata*, 788 F.3d at 1111–12. Therefore,
Harrell's claim is barred from federal habeas review unless he can establish cause for his
noncompliance and actual prejudice; or demonstrate that a miscarriage of justice would
result if the claims were not reviewed. *See Schlup*, 513 U.S. at 32; *Coleman*, 501 U.S. at
750; *Wainwright*, 433 U.S. at 87; *Cook v. Schriro*, 538 F.3d 1000, 1025–26 (9th Cir.
2008) (absent a showing of cause and prejudice, petitioner is barred from raising a claim
on federal habeas review where he failed to meet state's contemporaneous objection
rule).

As with his prosecutorial misconduct claims, Harrell has failed to establish cause
and/or prejudice and failed to demonstrate a miscarriage of justice to excuse the default.
Petitioner appears to argue defense counsel's failure to object on judicial misconduct
grounds constituted ineffective assistance of counsel sufficient to excuse the default. *See*
Traverse, ECF No. 17 at 24–36. As discussed above, ineffective assistance of counsel
may be a basis for establishing cause. *See Murray*, 477 U.S. at 488. However, for the
reasons discussed below in section V(F)(2) of this Order, Harrell has not shown any
instances of improper bias on the part of the trial judge and as such, any such objection
would have been futile. *See Rupe*, 93 F.3d at 1445 ("[T]he failure to take a futile action
can never be deficient performance.").

And even assuming defense counsel's failure to object specifically on judicial bias
grounds could amount to cause, Harrell has not satisfied the prejudice standard. To do so,
Harrell must show "actual harm resulting from the claimed constitutional violation."
*LaGrand v. Stewart*, 173 F.3d 1144, 1148 (9th Cir. 1999) (citing *Magby v. Wawrzaszek*,
741 F.2d 240, 244 (9th Cir. 1984). Again, for the reasons discussed in section V(F)(2)
below, the trial court's rulings did not constitute judicial bias or misconduct under state
or federal standards. As such, it stands to reason that any such objection raised by defense

counsel would have been futile. Because each of Harrell's sub-claims fail on the merits, he cannot meet the cause or prejudice standards. *See McCleskey*, 499 U.S. at 494.

Finally, Petitioner has not alleged that a miscarriage of justice will result should the Court not consider the claims. "The miscarriage of justice exception is limited to those extraordinary cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *See Johnson*, 541 F.3d at 936–38. Harrell has not established that the Court cannot have confidence in his guilt for the reasons discussed below. Therefore, the claims are procedurally defaulted.

### 2.   Merits

In an abundance of caution, and because it is relevant to the procedural default exceptions, the Court will review Harrell's judicial misconduct claims on the merits. Harrell raises several instances of purported judicial misconduct and/or bias, arguing his due process rights were violated when the trial judge improperly (1) denied his motion to suppress photos from the crime scene; (2) permitted the prosecution to elicit testimony about a defense expert; (3) prevented the defense from eliciting lay opinion testimony; (4) failed to instruct the jury on untimely disclosure of evidence; (5) interrupted cross-examination to take another witness out of order; (6) directed Harrell to answer questions during his testimony; (7) unnecessarily ordered extra security during Harrell's testimony; (8) improperly allowed the prosecutor to introduce inadmissible impeachment evidence; (9) improperly had Harrell removed from the courtroom. Pet., ECF No. 1 at 30–34. In a related claim, Harrell also argues (10) that defense counsel was ineffective in failing to object on judicial misconduct grounds. *Id.* at 31.

### a.   Clearly Established Law

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. *See In re Murchison*, 349 U.S. 133, 136 (1955); *see also Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (stating that due process requires "a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case"). "[D]ue process requires recusal where the judge has a

58

direct, personal and substantial pecuniary interest in convicting a defendant." *Hurles v. Ryan*, 752 F.3d 768, 789 (9th Cir. 2014) (citing *Tumey v. State of Ohio*, 273 U.S. 510, 523 (1927)). A non-pecuniary conflict may also "offend due process" if it would "tempt adjudicators to disregard neutrality." *Hurles*, 752 F.3d at 789 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 878 (2009)).

A claim of judicial misconduct or bias by a state judge in the context of federal habeas review does not simply require that the federal court determine whether the state judge committed judicial misconduct; rather, the question is whether the state judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted). To succeed on such a claim, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Rhoades v. Henry*, 598 F.3d 511, 519 (9th Cir. 2010) ("There is a strong presumption that a judge is not biased or prejudiced."); *see also Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008).

"In the absence of any evidence of some extrajudicial source of bias or partiality, neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases.'" *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Indeed, bias can "almost never" be demonstrated solely on the basis of a judicial ruling. *Liteky*, 510 U.S. at 555.

### b.   Admission of Crime Scene Photos

Harrell argues the trial judge committed misconduct and exhibited bias when he improperly allowed the prosecutor to admit photographs of the crime scene. Pet., ECF No. 1 at 30. Specifically, he contends the admission of photos depicting blood spatter found in Hodge's apartment amounted to misconduct that rendered his trial fundamentally unfair. *Id.* After finding the claim procedurally barred, the appellate court went on to deny it on the merits as well, stating:

59

1
2
3
4
5
6
7

During the investigation of the crime scene, police took photographs of the stairwell of the victim's apartment building and the interior of the apartment. Some of the photographs depicted blood spatter. During trial, the prosecution questioned a police officer about the photographs and moved the photographs into evidence. Harrell asserted a "352" objection, presumably on grounds the probative value of the evidence was substantially outweighed by the probability its admission would create substantial danger of undue prejudice. (Evid. Code, § 352.) The trial court overruled the objection. On appeal, Harrell contends the court erred in admitting the photographs because they were inflammatory and unduly prejudicial.

8
9
10
11
12
13
14
15
16

""""The admission of allegedly gruesome photographs is basically a question of relevance over which the trial court has broad discretion. [Citation.] 'A trial court's decision to admit photographs under Evidence Code section 352 will be upheld on appeal unless the prejudicial effect of such photographs clearly outweighs their probative value.'"""" (*People v. Mills* (2010) 48 Cal.4th 158, 191.) "That the challenged photographs may not have been strictly necessary to prove the People's case does not require that we find the trial court abused its discretion in admitting them. '[P]rosecutors, it must be remembered, are not obliged to prove their case with evidence solely from live witnesses; the jury is entitled to see details of the victims' bodies to determine if the evidence supports the prosecution's theory of the case.'" (*Ibid.*).

17
18
19
20
21
22
23
24
25
26
27

The court was well within its discretion in admitting the photographs at issue. The photographs corroborated the testimony of the victim and his physician regarding the seriousness of the victim's injuries. Such testimony was relevant to rebut the testimony of defense witnesses who described certain of the victim's injuries as "superficial." Further, by tending to establish the victim was bleeding heavily, the photographs were relevant to rebut the testimony of Harrell, who claimed he was unaware he had even stabbed the victim. Additionally, photographs depicting blood spatter, while perhaps unpleasant to view, are generally less gruesome and disturbing—and therefore less prejudicial—than photographs of homicide victims our Supreme Court has deemed appropriate for admission. (*People v. Ramirez* (2006) 39 Cal.4th 398, 409 [affirming admission of photograph depicting victim with her eyes cut out by murderer].) [¶] For all these reasons, we conclude the trial court properly exercised its discretion when it overruled Harrell's objection to the photographs at issue.

28

Cal. Ct. App. Opinion, ECF No. 11-28 at 22–24.

The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law. First, as noted above, a single adverse ruling almost never amounts to judicial misconduct. *See Liteky*, 510 U.S. at 555. To do so, Harrell must show the trial judge's conduct in admitting the evidence amounted to a due process violation. *See Duckett*, 67 F.3d at 740; *see also Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 67–68). "Although the [Supreme] Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing *Williams*, 529 U.S. at 375) (internal citation omitted). As the Ninth Circuit stated in *Holley*:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, [citation omitted], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application.

*Holley*, 568 F.3d at 1101 (citing *Williams*, 529 U.S. at 375 and *Musladin,* 549 U.S. at 77). When Supreme Court "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008). Given the absence of "clearly established federal law," the state court's ruling cannot amount to "unreasonable application." *Musladin*, 549 U.S. at 77.

Even if the law were clearly established law, Petitioner fails to show the admission of the crime scene photos "so fatally infected the proceedings as to render them fundamentally unfair." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991); *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005) ("A habeas petitioner bears a heavy

burden in showing a due process violation based on an evidentiary decision.") The Ninth Circuit has held that the admission of prejudicial evidence may make a trial fundamentally unfair and violate due process "[o]nly if there are no permissible inferences the jury may draw from the evidence." *Jammal*, 926 F.2d at 920.

Here, Harrell contends the photographs depicting blood spatter in Hodge's apartment were irrelevant because "Hodge's injuries were not disputed by the defense." Pet., ECF No. 1 at 32. But, as the state appellate court reasonably determined, the photos depicting Hodge's apartment, while graphic, were relevant and probative because they depicted the aftermath of the altercation and provided evidence of the extent of Hodge's injuries. Among other things, such evidence could be relevant to determining whether the amount of force used by Harrell was reasonable. Furthermore, the trial judge's conclusion that the probative value of the photographs outweighed their potential prejudicial impact was not unreasonable; nor did it amount to a due process violation. Courts have held that admission of relevant but graphic photographs of crime scenes do not render trials fundamentally unfair. *See Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997) (finding admission of "admittedly gruesome photos of the decedent" was not cognizable on federal habeas review and did not "raise[ ] the spectre of fundamental fairness such as to violate federal due process of law") (citing *Estelle*, 502 U.S. at 67–68); *see also Villafuerte*, 111 F.3d at 627 (concluding photos depicting the victim's body and blood at the crime scene were relevant and their admission did not violate due process). The trial court's admission of the evidence was not erroneous, nor did not amount to a violation of due process, much less rise to the level of judicial misconduct. *Jammal*, 926 F.2d at 920; *Duckett*, 67 F.3d at 740.

Therefore, the state court's denial of the claim was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. *See Miller-El*, 537 U.S. at 340. Moreover, the denial was neither contrary to, nor an unreasonable application of, clearly established law. *See Williams*, 423 U.S. at 412–13. Harrell is not entitled to relief as to this sub-claim.

c.      Admission of Evidence Regarding Defense Investigation

Next, Harrell claims the trial judge exhibited bias and committed misconduct when he denied defense counsel's motion to preclude the prosecution from presenting evidence that the defense team had engaged an expert to inspect Harrell's bicycle. Pet. ECF No. 1 at 30. In the last reasoned decision from the state courts, the appellate court found this claim barred from review for failure to object at trial, it went on to deny the claim on the merits as well. The court stated:

> Prior to trial, Harrell retained an expert to inspect Harrell's bicycle. Because police impounded the bicycle, defense counsel and the expert inspected the bicycle at the police station in the presence of the police detective assigned to the matter. During trial, Harrell moved to preclude the prosecution from eliciting testimony from the detective regarding the defense team's inspection of the bicycle on grounds the testimony would be irrelevant, among other reasons. In response, the prosecution argued the testimony was relevant due to the possibility Harrell might argue the prosecution's own inspection of the bicycle was shoddy. The court deferred ruling on whether the testimony would be admissible during rebuttal, but sustained the objection for purposes of the prosecution's case-in-chief. On appeal, Harrell incorrectly states the trial court ruled the detective "would be allowed to testify" about the defense's examination of the bicycle during rebuttal and contends the ruling was in error.
>
> Harrell mischaracterizes the record. The trial court did not conclude the detective "would be allowed to testify" about the defense team's inspection of the bicycle. Rather, it sustained the defense's objection for purposes of the prosecution's case-in-chief and deferred ruling on the objection for rebuttal purposes, as follows: "Let's see how it plays out from cross-examination and their—the presentation of the defense case and then we can revisit that." It later reiterated its deferral ruling: "After [the defense] case, we'll talk about it outside the presence of the jury. If [the prosecutor] still wants to bring that up, we'll address it outside the presence of the jury, but she is not allowed to bring it up during her case-in-chief." The trial court's mere reservation of a ruling was neither erroneous nor a reflection of judicial bias.

Cal. Ct. App. Opinion, ECF No. 11-28 at 24–25.

/ / /

As discussed above, a single adverse ruling is almost never sufficient to establish judicial misconduct. *Liteky*, 510 U.S. at 555. The admission of prejudicial evidence, however, may make a trial fundamentally unfair and violate due process, but "[o]nly if there are no permissible inferences the jury may draw from the evidence." *Jammal*, 926 F.2d at 920. Here, as the appellate court noted, there was no testimony presented by the prosecution regarding the defense expert's inspection of the bicycle. When the topic came up during the prosecutor's case-in-chief, prior to the testimony of Officer McCullough, defense counsel asked that the prosecution be prevented from eliciting testimony from McCullough about the inspection of the bicycle by defense experts. Rep.'s Tr., ECF No. 11-14 at 1209. Defense counsel argued the inspection was protected by attorney-client privilege and irrelevant. *Id.* Initially, the trial judge suggested he was inclined to permit the questioning in the prosecutor's case-in-chief (*see id.* at 1210), but after further argument, reversed course, stating to the prosecutor: "That's all fair game in your rebuttal. Don't bring up the defense during your case-in-chief. . . Let's see how it plays out from cross-examination and their – the presentation of the defense case and then we can revisit that." *See id.* at 1214.

Harrell argues that when McCullough testified later on direct, the "trial court allowed [McCullough] to testify to the defense expert's findings as to the bicycle inspection." Pet., ECF No. 1 at 30. Harrell's allegation is contradicted by the record. McCullough testified that he originally thought there might be droplets of blood on the bicycle but after getting a lab report, he learned no blood had been found. Rep.'s Tr., ECF No. 11-16 at 1918. He testified that he went back and inspected the bicycle himself and discovered that what he had previously thought might be blood droplets were actually "probably just rust." *Id.* at 1918–19. There was no mention of the defense expert's inspection of the bicycle and defense counsel did not bring it up on cross-examination. *See generally*, *id.* at 1924–40. In short, the testimony about which Harrell complains was never elicited.

/ / /

3:21-cv-0255-RBM-AHG

1    The state appellate court's denial of this claim was therefore neither contrary to,

2    nor an unreasonable application of, clearly established law. *See Williams*, 529 U.S. at

3    412–13; 28 U.S.C. §2254(d)(1). The state court's decision was based on a reasonable

4    determination of the facts in light of the state court record. *See Miller-El*, 537 U.S. at

5    340. Harrell is not entitled to relief.

6                    d.      Exclusion of Lay Opinion Testimony

7        Next, Harrell contends his due process rights were violated when the trial judge

8    excluded lay opinion testimony. He argues that the purported error amounted to judicial

9    misconduct. Pet., ECF No. 1 at 31. The appellate court's opinion is the last reasoned

10   decision from the state courts, to which this Court must look. *See Ylst*, 501 U.S. at 805–

11   06. The court denied the claim, stating:

12            During the cross-examination of the police detective, defense counsel
         asked the detective whether the testimony and pretrial statements of several
13       witnesses was consistent with the physical evidence at the scene of the
         crime. For instance, he asked the detective the following question: "The fact
14       that there's a trail of blood leading from the door to the street or from the
         street to the door is inconsistent with [the victim's] statement that the
15       altercation occurred just at the door of the building, right?" The prosecution
         objected to this question and similar questions on grounds they called for
16       speculation and were irrelevant and argumentative. The trial court sustained
         the objections. On appeal, Harrell contends the questions were permissible
17       because they merely sought to elicit the detective's lay observations
         regarding the crime scene.
18
19
20            "Lay opinion about the veracity of particular statements by another is
21       inadmissible on that issue. [T]he reasons are several. With limited
         exceptions, the fact finder, not the witnesses, must draw the ultimate
22       inferences from the evidence. Qualified experts may express opinions on
         issues beyond common understanding [citations], but lay views on veracity
23       do not meet the standards for admission of expert testimony.... [A] lay
         opinion about the veracity of particular statements does not constitute
24       properly founded character or reputation evidence [citation], nor does it bear
         on any of the other matters listed by statute as most commonly affecting
25       credibility [citation]. Thus, such an opinion has no 'tendency in reason' to
26       disprove the veracity of the statements." (*People v. Melton* (1988) 44 Cal.3d
27       713, 744; *see People v. Zambrano* (2004) 124 Cal.App.4th 228, 240.)
28

3:21-cv-0255-RBM-AHG

1

2          Applying these standards, we conclude the trial court correctly
3      sustained the prosecution's objections. From our review of the record, it is
       apparent Harrell did not pose the questions at issue to elicit testimony from
4      the detective regarding the layout or characteristics of the crime scene.
5      Rather, they served no purpose other than to elicit the detective's
       inadmissible lay opinion regarding the veracity of the prosecution's
6      witnesses. Such testimony would have invaded the province of the jury as
7      the ultimate fact finder, would not have constituted properly founded
       character or reputation evidence, and would not have been relevant to any
8      issue in the case.

9  Cal. Ct. App. Opinion, ECF No. 11-28 at 25–26.

10          Harrell argues the trial judge was biased when he prevented Detective McCollough

11  from testifying as to his opinion regarding whether the blood evidence was consistent

12  with Hodge's testimony. As noted above, an adverse evidentiary ruling alone is

13  insufficient to rebut the presumption of judicial integrity. *Larson*, 515 F.3d at 1067;

14  *accord United States v. Johnson*, 610 F.3d 1138, 1148 (9th Cir. 2010) ("Adverse findings

15  do not equate to bias."). The trial court's decision to preclude McCullough from

16  testifying as to his opinion regarding about whether the blood evidence supported

17  Hodge's testimony does not amount to bias sufficient to render Harrell's trial

18  fundamentally unfair. *See e.g., United States v. Sanchez*, 176 F.3d 1214, 1220 (9th Cir.

19  1999) (concluding questions that compelled the defendant to give his opinion regarding

20  the credibility of another witness were improper); *United States v. Sullivan*, 85 F.3d 743,

21  749-50 (1st Cir. 1996) ("[C]ounsel should not ask one witness to comment on the

22  veracity of the testimony of another witness"). The jury heard testimony from

23  McCullough as to the location of blood evidence. The jury was then free to use their own

24  judgment to determine whether the location of the blood suggested that Hodge's or

25  Harrell's testimony about the location of the altercation was more believable. It is the

26  "province of the jury to determine the credibility of witnesses." *Walters*, 45 F.3d at 1358.

27          To the extent Harrell argues his due process rights were violated because the trial

28  judge improperly prevented him from presenting a meaningful defense, his claim also

lacks merit. Although "few rights are more fundamental than that of an accused to present witnesses in his own defense," *Taylor*, 484 U.S. at 408, the United States Supreme Court has held that a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Id*. at 410. The states retain "broad latitude under the Constitution to establish rules excluding evidence from criminal trials[.]" *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *see also Crane v. Kentucky*, 476 U.S. 683, 689–90 (1986). Moreover, it is clearly established that "rules of evidence [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury" do not violate a defendant's due process right to present a defense. *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). And as the state court found, under California law, lay opinion about the veracity of particular statements by another witness is inadmissible. *See Melton*, 44 Cal. 3d at 744. This is consistent with federal law. *See United States v. Sanchez*, 176 F.3d 1214, 1220–21 (9th Cir. 1999) (holding that it was improper to ask government witness: "what is your opinion regarding how truthful he was being to you on that day?"); *United States v. Sanchez–Lima*, 161 F.3d 545, 548 (9th Cir. 1998) (concluding it was error to permit testimony of government witness "that, based on his training and experience, [another witness] was telling the truth"). Thus, the trial court's exclusion of McCullough's opinion on the veracity of Hodge's testimony did not deprive Harrell of an opportunity to present a meaningful defense. *See Holmes*, 547 U.S. at 326.

Based on the foregoing, the state court's denial of the claim was neither contrary to, nor an unreasonable application of clearly established law. *See Williams*, 529 U.S. at 412–13; 28 U.S.C. § 2254(d)(1). Nor was it based on an unreasonable determination of the facts presented at trial. *See Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2). Harrell is not entitled to relief as to this sub-claim.

/ / /

/ / /

1

e.      Failure to Instruct on Late Discovery

2      Harrell argues the trial judge showed improper bias when he failed instruct the jury

3   with CALCRIM No. 306 regarding the purported late disclosure by the prosecutor

4   regarding Hodge's prior conviction. Pet., ECF No. 1 at 30. CALCRIM No. 306, the

5   standard instruction regarding "Untimely Disclosure of Evidence" late discovery,

6   provides in pertinent part:

7          Both the People and the defense must disclose their evidence to the
           other side before trial, within the time limits set by law. Failure to follow
8          this rule may deny the other side the chance to produce all relevant evidence,
           to counter opposing evidence, or to receive a fair trial.
9

10         An attorney for the (People/defense) failed to disclose: <describe
           evidence that was not disclosed> [within the legal time period].
11

12         In evaluating the weight and significance of that evidence, you may
           consider the effect, if any, of that late disclosure.
13

14

15   CALCRIM No. 306. [7]

16      Harrell contends the instruction should have been given because the prosecutor

17   failed to timely disclose the details of Hodge's criminal history. *Id.* By way of

18   background, prior to trial, it was the prosecutor's understanding that Hodge had a prior

19   felony conviction for which he had served prison time. Rep.'s Tr., ECF No. 11-14 at

20   1281. She prepared a list of Hodge's criminal history, which she shared with defense

21   counsel, that included case numbers, dates and dispositions. *Id.* at 1289. The list indicated

22   that all the cases had been dismissed, with the exception of the one 2015 conviction that

23   both she and defense counsel understood had resulted in a prison sentence. *Id.* Just before

24

25

26   [7] At least one California court has described CALCRIM No. 306 as providing only
     "vague guidance." *See People v. Morfin*, No. F071568, 2017 WL 4875814, at *6
27   (Cal. Ct. App. Oct. 30, 2017) "([CALCRIM No. 306] does not provide meaningful
     guidance as to the significance of such a discovery violation.")
28

Hodge was scheduled to testify, the prosecutor sought clarification about his time in prison and learned from Hodge that he had not done "prison" time[8] but rather served a "split sentence" in an unlocked facility. *Id.* Upon learning that Hodge had not served time in prison (or suffered a felony conviction), the prosecutor immediately relayed the information to defense counsel. *Id.* at 1282–83. Defense counsel then asked the trial court to instruct the jury pursuant to CALCRIM No. 306 that the state had failed to timely disclose the information. *Id.* at 1287–88.

The court of appeal reviewed the merits of this claim and denied it, stating in relevant part:

> The court denied the request on grounds the disclosure was timely and Harrell had not demonstrated prejudice from the timing of the disclosure. [¶] We agree with the trial court on both counts. There was no late disclosure here, as the prosecutor immediately disclosed to defense counsel the meeting and the information she learned from the victim. (§ 1054.7 "[If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately, unless good cause is shown ...."]; *People v. Mora and Rangel* (2018) 5 Cal.5th 442, 468 [discovery statutes not violated because, "as soon as the prosecution learned of various late-disclosed documents, they were made available to the defense"].) Further, Harrell has not articulated any discernable prejudice, given that he was already aware of the case number and date of the victim's conviction, and thus had the information necessary to cross-examine the victim about the topic. For both reasons, we conclude the trial court properly refused to give the late disclosure jury instruction.

Cal. Ct. App. Opinion, ECF No. 11-28 at 26–28.

Harrell is not entitled to relief. "There is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Thus, to the extent Petitioner contends the prosecutor violated state law in failing to timely turn

---

[8] Upon discussing the matter with Hodge, it became clear to the prosecutor that Hodge had confused his pre-trial detention in jail for "prison" time. *See* Rep.'s Tr., ECF No. 11-14 at 1289.

over the discovery, he has not stated a cognizable federal claim. *Estelle*, 502 U.S. at 67 ("[F]ederal habeas relief does not lie for error of state law."); *see also Venable v. Virga*, No. 13-cv-7458-VAP-AS, 2015 WL 4694092, at *15 (C.D. Cal. Aug. 3, 2015) (finding claim that trial court erred by opting not to sanction the prosecutor for delayed discovery not cognizable on federal habeas); *Dashawn v. Montgomery*, No. 19-cv-8840-RGK-LAL, 2021 WL 2670727, at *9 (C.D. Cal. Apr. 20, 2021) ("Whether or not the prosecution timely complied with state discovery deadlines regarding the production or identification of evidence does not present a federal constitutional question cognizable on federal habeas review."). Because the evidence at issue was disclosed to the defense during trial, Petitioner has also failed to allege a federal constitutional violation based on withholding exculpatory evidence.[9]

Furthermore, even assuming the trial court erred in not instructing the jury regarding late discovery, Harrell still has not shown it was based on judicial bias or misconduct to decline to give the instruction. As discussed above, judicial rulings alone almost never constitute a valid basis for finding a judge biased, and the trial court's rulings in petitioner's case certainly do not do so here. *See Liteky*, 510 U.S. at 555–56; *see also Larson*, 515 F.3d at 1067. Moreover, the prosecutor provided the information to defense counsel as soon as she learned of it. Rep.'s Tr., ECF No. 11-4 at 1289. And prior to the disclosure, defense counsel had access to the same information the prosecutor had

---

[9] The Ninth Circuit has held a prosecutor's failure to give timely notice of new or additional witnesses she planned to call at petitioner's trial, in violation of California's criminal discovery provisions, does not violate the Eighth or Fourteenth Amendments. *Turner v. Calderon*, 281 F.3d 851, 867–68 (9th Cir. 2002) And while it is well-recognized that due process requires disclosure of exculpatory or impeaching evidence that is both favorable to the accused and material to guilt or punishment, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), Harrell has not raised a *Brady* claim in his Petition. He has not argued (nor could he) the prosecution failed to disclose evidence. Rather, he contends only that the prosecution did not make a timely disclosure of evidence and alleges the trial court's failure to provide a curative instruction amounted bias sufficient to violate due process. Pet., ECF No. 1 at 30.

regarding Hodge's criminal history, including dates and case numbers. *Id.* at 1282–83. That Hodge had not served a prison sentence was information available to defense counsel had he simply checked. Therefore, the trial court's failure to give a jury instruction regarding the late discovery did not amount to judicial bias sufficient to render Harrell's trial fundamentally unfair.

The state court's denial of the claim was neither contrary to, nor an unreasonable application of clearly established law. *See Williams*, 529 U.S. at 412–13; 28 U.S.C. §2254(d)(1). Furthermore, the state court's decision was based on a reasonable determination of the facts in light of the evidence presented at trial. *See Miller-El*, 537 U.S. at 340. Harrell is not entitled to relief.

f.    Order of Witnesses

In his next sub-claim, Harrell argues the trial court exhibited bias and committed misconduct when it permitted to prosecution to call a physician to testify out-of-order and during a pause in the defense's cross-examination of Hodge. Pet., ECF No. 1 at 31, 33. In summary, while defense counsel was cross-examining Hodge, the prosecutor notified the trial judge that one of its witnesses, the doctor who treated Hodge the night he was stabbed, would be unable to testify at the time originally planned because he had been called to perform surgery. Rep.'s Tr., ECF No. 11-15 at 1587–88. Defense counsel objected because it would interrupt his cross-examination of Hodge. *Id.* at 1588–89. The trial court then called the doctor in, outside the presence of the jury, to inquire as to his scheduling issue. The doctor stated that he had an emergency surgery that afternoon and then would be out of town. There was no other surgeon that could cover for his surgery and it could not be rescheduled. *Id.* at 1590, 1592. After questioning the doctor and hearing defense counsel's objection, the court concluded that the prosecution could call the doctor out of order and defense counsel could resume cross-examination of Hodge immediately the doctor's testimony concluded. *Id.* at 1593.

The California Court of Appeal issued the last reasoned decision to address this claim. In denying it, the court stated:

"Code of Civil Procedure section 607 prescribes the order of proceedings at trial, 'unless the court, for special reasons otherwise directs.' Evidence Code section 320 states that the court has the discretion to regulate the order of proof: 'Except as otherwise provided by law, the court in its discretion shall regulate the order of proof.' Accordingly, we generally review a trial court's ruling as to the order of proof at trial for abuse of discretion." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1413 (*Rayii*).)

We conclude the court did not abuse its discretion in granting the prosecution's request to call the physician out of order. The court was presented with three less-than-ideal options—(1) permit the prosecution to call the physician out of order; (2) compel the physician to reschedule a potentially life-saving surgery; or (3) compel the physician to reschedule a vacation scheduled for the following week. Given these options, the determination to permit an out-of-order witness did not amount to an abuse of discretion. (*Rayii*, supra, 218 Cal.App.4th at p. 1413 [no abuse of discretion where court allowed out-of-order witness "to avoid having to continue the trial date, force the witnesses to cancel their vacation plans or forego their testimony"].) Further, we discern no prejudice from the case management order. The physician quickly completed his testimony and the cross-examination of the victim resumed—and finished—the same afternoon. The court's order was not erroneous and it was not misconduct.

Cal. Ct. App. Opinion, ECF No. 11-28 at 28–29.

The Supreme Court has held that "the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand." *Brooks v. Tennessee*, 406 U.S. 605, 613 (1972). At the same time, however, the Court in *Brooks* "clearly expressed its unwillingness to 'curtail[] in any way the ordinary power of a trial judge to set the order of proof.'" *Harris v. Barkley*, 202 F.3d 169, 174 (2d Cir. 2000) (quoting *Brooks*, 406 U.S. at 613).

Here, Harrell has not shown his due process rights were violated when the trial judge allowed a prosecution witness to testify out-of-order. Federal law clearly allows a trial court to do so. As the Supreme Court noted, beyond the question of when a defendant might testify, a trial judge retains the "ordinary" power to set the "order of proof." *Brooks*, 406 U.S. at 612–13. Nor does *Brooks* "constitute a general prohibition

72

against a trial judge's regulation of the order of trial in a way that may affect the timing of a defendant's testimony." *Harris*, 202 F.3d at 173. Thus, the trial court's decision to permit the expert to testify out-of-order did not constitute misconduct or bias sufficient to render Harrell's trial fundamentally unfair. And as such, the state court's denial of this sub-claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 412–13; 28 U.S.C. §2254(d)(1). Moreover, the state court's decision was not based on an unreasonable determination of the facts. *See Miller-El*, 537 U.S. at 340; 28 U.S.C. §2254(d)(2). He is not entitled to relief as to this sub-claim.

g.     Instructing Harrell to Answer

Next, Harrell argues the trial judge exhibited bias against him when he admonished him during his testimony. Pet., ECF No. 1 at 31. By way of background, Harrell testified in his own defense at trial, beginning on April 3, 2018. *See* Rep.'s Tr., ECF No. 11-17 at 2252. The prosecutor began her cross-examination of Harrell the next day. *Id.*, ECF No. 11-18 at 2754. Toward the end of the afternoon, Harrell appeared to become frustrated with some of the prosecutor's questions and the following exchange occurred:

> [Prosecutor]: Now, I want to talk just a little bit – I want to go back in time.  You had – you spent a lot of time talking about your history. In fact, I think you told us from the year 2000 and 2003, you attended a general contracting school that was in Sorrento Valley; is that right?
>
> [Harrell]: Associated General Contractors.
>
> Q:     When – when did you start that? What month in 2000?
>
> A:     I don't know when I started. All I remember is, all you got to do is call – call up the school, get the records, and they'll tell you that I graduated in 2003.
>
> Q:     Okay. Did you – is it a classic school that you go to every day? Show up once a week?

73

A:   No, I was an apprentice. I would go to work every single day, Monday and Wednesdays or Tuesdays and Thursdays from 5:30 to 9:00 o'clock, I would go to that school.

Q:   Okay. But you don't remember when you started in 2000?

A:   I can't even say if I started in 2000. I'm not for sure. I mean, I just know that I had graduated in 2003.

Q:   So before you were very sure that you went from 2000 to 2003, but now you're not sure if it was 2000; is that what you're saying?

A:   That has nothing to do with this case. All you got to do if you think I'm lying, call the school and get my certification. I'm certified union carpenter in the state of California.

Court: Mr. Harrell, Just answer the question.

[Harrell]: I did.

[Prosecutor]:  Now I guess you said after you graduated in 2003, from there you went to the journeyman's journey carpenter's training, and then you became a member of the union. When did you start that training to become a carpenter?

A:   I didn't -- I didn't start any training. Once I graduated from the apprenticeship –

Q:   In 2003?

A:   -- I became a journeyman carpenter.

Q:   Okay.

A:   And then at that point, I joined the local 547 carpenter's union in Mira Mesa.

Q:   Okay. When did you do that? What year? What month?

A:   I'm not for sure. I don't know. I can't really say. I just know

3:21-cv-0255-RBM-AHG

that after I graduated, I got tired for working for the local nonunion companies, and so I joined the union. I can't say when I did.

Q:    Are you still a member?

A:    I can't work – I can't work outside, period, after I had that stroke.

Q:    Okay. What I'm trying to get from you is you have a lot of history about you becoming a carpenter, a journey carpenter, becoming part of the union after 2003. I'm trying to get down when you worked last. When did you work that job?

A:    I worked several jobs. You're trying to get me to lie, that's what you're trying to do, but I'm not going to do that.

Q:    I'm just asking you when you actually worked this job.

A:    You should call the union and get the phone number and get their records, and they'll tell you themselves.

Court: Answer the question.

A:    I just did.

Q:    No. Answer the question. Don't tell –

A:    I don't – I don't know when. I don't know when I started. I had already – when I finished that school, that carpenter – the apprenticeship is a three-year apprenticeship. I got certified. And the after that, I could either stay nonunion, or I could be union.

Q:    So you said you graduated in 2003?

A;    Yes.

Q:    And that's when you finished your apprenticeship and got certified. So you would have started in 2003, you don't know when though?

A:     I don't know when.

Q:     Okay. So you got certified in 2003, and then you did what.

A:     I continued on in the -- in the field. You know, I continued on
       projects, several projects in San Diego.

Rep.'s Tr., ECF No. 11-18 at 2780–81.

As discussed above, Harrell alleges the trial judge showed bias in violation of his due process rights when the judge directed him to answer the question that he had already responded to by telling the prosecutor that he did not know the answer. Pet., ECF No. 1 at 31, 33. The last reasoned state court decision addressing this claim is that of the California Court of Appeal, which denied it, stating:

> We conclude the court's admonitions were proper. As the People correctly note, Harrell provided nonresponsive and combative testimony when he told the prosecutor to "call the school" and "call the union" if she wanted her questions answered. The court did not make discourteous, unnecessary, or value-laden comments in the presence of the jury regarding Harrell's testimony. Rather, it exercised necessary and appropriate control over the interrogation by succinctly admonishing Harrell to answer the questions. (Evid. Code, § 765, subd. (a) ["The court shall exercise reasonable control over the mode of interrogation of a witness so as to make interrogation as rapid, as distinct, and as effective for the ascertainment of the truth, as may be ...."].) The court's admonitions were proper and, therefore, did not reflect an impermissible exercise of judicial bias.

Cal. Ct. App. Opinion, ECF No. 11-28 at 30–31.

It is clearly established that absent evidence of some extrajudicial source of bias or partiality, adverse rulings and/or impatient remarks are generally insufficient to overcome the presumption of judicial integrity, even if those remarks are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases." *Larson*, 515 F.3d at 1067 (quoting *Liteky*, 510 U.S. at 555). The Supreme Court has stated that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display. A judge's

76

ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Liteky*, 510 U.S. at 555–56.

Here, the state court's decision was neither contrary to, nor an unreasonable application of clearly established law. The judge's remarks did not originate from an extra-judicial source but were responses to incidents that occurred during the proceedings and instigated by Petitioner. Harrell was having difficulty focusing during his testimony and at times, failed to answer the call of the prosecutor's questions. The trial judge acted within his authority to control the courtroom when he admonished Petitioner to answer the questions asked by the prosecutor. *Id.*; *see also Illinois v. Allen*, 397 U.S. 337, 343–44 (1970) ("We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations."); *Wharton v. Calderon*, 127 F.3d 1201, 1207 (9th Cir. 1997)

Even if Harrell could show bias, the record here shows that the trial court gave numerous instructions that the jury was not to consider the court's admonitions, comments, or rulings in reaching its decision. *See, e.g.*, Clerk's Tr., ECF No. 11-4 at 423 (instructing the jury under CALCRIM No. 200 that its duty was to "decide what the facts are" and "it is up to all of you, and you alone to decide what happened, based only on the evidence that has been presented to you in this trial."); *see also id.* at 444–45 instructing the jury under CALCRIM No. 3550 that "[i]n considering the evidence, you should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be."). The jury is presumed to have followed its instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Therefore, Harrell has failed to show the state court's denial of his claim was contrary to federal law or an unreasonable application of it. *See Williams*, 529 U.S. at 412–13; 28 U.S.C. §2254(d)(1). He has also failed to establish that the state court's

decision was based on an unreasonable determination of the facts in light of the evidence presented at trial. *See Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2). Harrell is not entitled to relief.

### h.   Extra Bailiff

In his next sub-claim, Harrell argues the trial judge showed impermissible bias when it ordered a second bailiff be stationed near Harrell while he testified. Pet., ECF No. 1 at 31. The state appellate court denied Harrell's judicial misconduct claim for the same reasons it denied Harrell's due process claim. Cal. Ct. App. Opinion, ECF No. 11-28 at 21 fn. 6 ("As discussed ante, we conclude the court acted within its discretion when it ordered the stationing of a second bailiff.")

As discussed above in section V(D) of this Order, the trial court acted well within its discretion in ordering a single additional bailiff during Petitioner's testimony, given Harrell's history of disruptive behavior. *See Holbrook*, 475 U.S. at 568; *see also Williams* 384 F.3d at 588 (denying habeas relief after concluding addition of four marshals to the courtroom was not inherently prejudicial). The judge's decision does not amount error, much less suggest bias or misconduct sufficient to render Harrell's trial fundamentally unfair. Therefore, the state court's denial of the claim was not contrary to, or an unreasonable application of, clearly established law; nor was it based on an unreasonable determination of the facts presented at trial. *See Williams*, 529 U.S. at 412–13; *Miller-El*, 537 U.S. at 340; 28 U.S.C. §§ 2254(d)(1), (d)(2).

### i.   Admission of Impeachment Testimony

Harrell argues the trial court exhibited bias in violation of his due process rights when it denied defense counsel's motion for mistrial after the prosecutor questioned him about his history of domestic violence. Pet., ECF No. 1 at 31. Specifically, during direct testimony, Harrell described a disagreement he had with a coworker. He testified: "I just told her how I felt, you know, and it never got—I don't hit, I don't hit women, period, so I wasn't— it never got to the point to where I was going to hit her or anything like that." Rep.'s Tr., ECF No. 11-17 at 2272. The next day on cross-examination, the

78

following exchange occurred between the prosecutor and Harrell:

Prosecutor:   When you were talking about that on direct, you made the comment "I don't hit women, I just don't." That's not really true, is it?

Defendant:   Well, I have four daughters. I wouldn't appreciate nobody putting their hands on my – my girls so. And if you're trying to refer to my wife, you know, I don't know what you—I don't know what you're trying to get at, but I have never beat on my wife, and I have never hit her, period. And I have never been convicted of any domestic violence, period.

Prosecutor:   You talked about that [your wife] was vindictive when she got a protective order against you; do you remember saying that?

Defendant:   Yes, I mean if I said I, that's what I meant when I said it. If I said that, yes.

Prosecutor:   And the protective order was actually an order of protection for domestic violence that she got against you back in 2016, right?

Defendant:   No, it wasn't. It was for me – like she got – she had a temporary stay-away order for me not even to go to my own residence. I mean, I lived in the residence with her. Without me, she couldn't live in the residence.

Rep.'s Tr., ECF No. 11-18 at 2789–90. At that point, defense counsel requested a mistrial. *Id.* at 2790. The trial court denied it, finding that Harrell had opened the door when he testified the previous day that he doesn't "hit women, period." *Id.* at 2793–94.

In the last reasoned opinion from the state courts, the California Court of Appeal denied the claim, stating in relevant part:

"There is little doubt exposing a jury to a defendant's prior criminality presents the possibility of prejudicing a defendant's case and rendering suspect the outcome of the trial." (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1580.) However, the prosecution did not initiate the discussion of Harrell's prior misconduct. Rather, he volunteered the information himself when he testified he didn't "beat [his] wife," his wife "put a restraining order against" him, "they said it was domestic violence," and he didn't "hit

79

1  women, period." This testimony opened the door to the topic of his history
2  of violence, which the prosecution was permitted to explore on cross-
3  examination. (*Andrews v. City and County of San Francisco* (1988) 205
   Cal.App.3d 938, 946 ["[A] witness who makes a sweeping statement on
4  direct or cross-examination may open the door to use of otherwise
5  inadmissible evidence of prior misconduct for the purpose of contradicting
   such testimony."]; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1147 [denial
6  of mistrial proper where defendant "opened the door to ... inquiry
7  concerning his admitted drug use"].) As such, the court did not abuse its
   discretion in denying the motion for a mistrial.

9  Cal. Ct. App. Opinion, ECF No. 11-28 at 31–32.

10      The appellate court's denial of this claim was not unreasonable. Under California

11  law, character evidence is generally inadmissible to prove a defendant's conduct on a

12  specific occasion. Cal. Evid. Code § 1101(a). Prior to Harrell's testifying, the trial court

13  addressed the issue of whether Harrell "may be impeached with his felony convictions or

14  conduct involving moral turpitude if he testifies." Rep.'s Tr., ECF No. 11-10 at 418. The

15  judge stated he would reserve ruling on the specifics of the matter until it was clear

16  whether Harrell would testify, at which point "we can address which felonies can come in

17  to impeach him, and we'll just follow the rules with regard to allowing impeachment

18  evidence by way of convictions. *Id.*

19      It was Harrell himself who opened the door to being impeached about the

20  restraining order by testifying that he did not "hit women." "A defendant cannot

21  complain about the admission of bad acts evidence when he himself opens the door,

22  either by introducing the subject or by advancing a theory that makes his prior acts

23  relevant on an issue other than criminal propensity." *Lambert v. Maass*, 39 F.3d 1187

24  (9th Cir. 1994). Thus, admission of the testimony was not erroneous, much less

25  suggestive of judicial misconduct or bias. *See Larson*, 515 F.3d at 1067.

26      Moreover, even assuming it was error to permit the state to ask Harrell about the

27  domestic violence restraining order, the mere admission of propensity evidence does not

28  necessarily render a trial fundamentally unfair. The Supreme Court has specifically left

1    open the question of whether admission of propensity evidence violates due process.

2    *Estelle*, 502 U.S. at 75 n. 5 (1991) ("[W]e express no opinion on whether a state law

3    would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to

4    show propensity to commit a charged crime."). Given the Supreme Court's reference to it

5    as an "open question," the Ninth Circuit has held that a habeas petitioner's due process

6    right concerning the admission of propensity evidence is not "clearly established" for

7    purposes of habeas relief. *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006);

8    *accord Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (affirming that under

9    *Alberni* admission of propensity evidence is not contrary to clearly established law for

10   purposes of federal habeas review because "no Supreme Court precedent establish[es]

11   that admission of propensity evidence . . . to lend credibility to a sex victim's allegations,

12   and thus indisputably relevant to the crimes charged, is unconstitutional"). The absence

13   of clearly established law on the admission of prejudicial evidence or propensity evidence

14   precludes habeas relief on due process grounds. *See Wright*, 552 U.S. at 126 (stating that

15   given the absence of "clearly established federal law," the state court's ruling cannot

16   amount to "unreasonable application"); *Musladin*, 549 U.S. at 77.

17       Therefore, Harrell has failed to show the state court's denial of this claim was

18   contrary to or an unseasonable application of clearly established law. *See Williams*, 529

19   U.S. at 412–13; 28 U.S.C. §2254(d)(1). He has also failed to show the state court's

20   decision was based on an unreasonable determination of the facts presented at trial. *See*

21   *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2). This sub-claim is denied.

22                    j.    Excluding Harrell from Proceedings

23       In his next sub-claim, Harrell argues the trial judge exhibited bias and engaged in

24   misconduct when he ordered Harrell excluded from portions of the proceedings,

25   specifically the trial on his prior convictions, jury readbacks during deliberations and the

26   taking of the verdict on Count Two. Pet., ECF No. 1 at 31.

27       As discussed above, there were several occasions during the trial when Harrell

28   was disruptive. After closing arguments concluded and deliberations were to begin, the

parties discussed whether it was necessary to have Harrell present for the reading and answering of jury questions. Rep.'s Tr., ECF No. 11-34 at 3712. Defense counsel informed the judge that Harrell declined to waive his presence for any of the proceedings, including the reading of jury questions. The following exchange occurred:

The Court:     Hmm. Well, we'll see if [jury readback is] something that requires [Harrell's] presence.

Defendant:     It does.

The Court:     I'm . . .

Defendant:     It does require my presence.

The Court:     Huh?

Defendant:     It's my life, man. What, you mean to tell me you think I trust her or I trust her? I want to be up here . . .

The Court:     Quiet.

Defendant:     when anything goes on up here –

The Court:     Quiet. Quiet.

Defendant:     – or anything happens in the courtroom.

The Court:     Remove him out of the courtroom.

Defendant:     You think you gonna railroad me? If a question's asked, I want to be here.

The Court:     Leave. Leave.

Defendant:     Shit. Shit. Kangaroo-ass court.

(2:28 p.m., defendant removed from the courtroom.)

Rep.'s Tr., ECF No. 11-34 at 3712.

/ / /

The next day, the court and parties discussed whether Harrell's presence would be permitted for the remainder of the proceedings. The trial judge summarized Harrell's pattern of inappropriate behavior on the record, stating, in part:

> I think that the Court has really bent over backwards to keep Mr. Harrell in line. I have repeatedly warned him, and he has apologized, has indicated that he would not do it again, and then he behaves well for awhile and then he just loses it, and he gets increasingly more and more disrespectful, and he -- when he was removed, we -- I could still hear him in the holding area screaming things about me and so I don't have any expectation that his behavior would change if I brought him back in here. I think he would continue to be disorderly, disruptive, and disrespectful of the Court.

Rep.'s Tr., ECF No. 11-21 at 3926–27. The judge ultimately concluded Harrell should be barred from attending jury readback, his trial on prior convictions and the verdict on Count Two. *See id.*; *see also* ECF No. 11-21 at 3908.

The state appellate court reviewed his claim and denied it on the merits, stating:

> Harrell contends the court violated his state and federal rights to be present at each critical stage of the criminal proceedings when it removed him from the courtroom. We disagree. "Under the federal and state constitutions, 'a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.'" (*People v. Bell* (2019) 7 Cal.5th 70, 117; see also § 1043, subd. (b)(1).)
>
> As noted *ante*, Harrell exhibited disruptive behavior throughout the trial, including by acting in a confrontational manner with bailiffs, making noises and visibly reacting during the court's rulings, and yelling the court was "stackin' up the deck against" him. Following one of the disruptions, the court warned Harrell he would be removed and subsequently removed him when he continued his misconduct. Although he was later permitted back into the courtroom, he again interrupted proceedings by cursing at the court and lambasting it for its purported partiality. He interrupted courtroom

/ / /

proceedings again the following day by stating in open court that the court was violating his rights. Despite a warning he would be removed, Harrell continued his interruption.

Given Harrell's history of disorderly conduct and the repeated warnings he received from the trial court, we conclude the court's order removing Harrell from the courtroom did not violate his right to be present at the critical stages of his case. (*People v. Welch* (1999) 20 Cal.4th 701, 773 [court did not violate defendant's right to be present at his trial where defendant exhibited disruptive and belligerent behavior]; *People v. Sully* (1991) 53 Cal.3d 1195, 1239, 1240–1241 [defendant waived his right to remain in the courtroom by "hurling obscenities at the court and jurors"].)

Cal. Ct. App. Opinion, ECF No. 11-28 at 33–35.

It is clearly established that an accused has the right to be present in the courtroom at every stage of his under the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments. *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam); *Pointer v. Texas*, 380 U.S. 400, 406 (1965). However, that right can be waived. *See Gagnon*, 470 U.S. at 528 (finding that the absence of an objection constitutes waiver of right to be present at all stages of criminal trial). However, a defendant may waive his right to be present through his disruptive conduct at trial. *Illinois v. Allen*, 397 U.S. 337, 343 (1970); *see also Campbell v. Blodgett*, 978 F.2d 1502, 1508–11 (9th Cir. 1992) (analyzing Supreme Court cases holding that a defendant may voluntarily or involuntarily waive his right to be present at trial, and finding that defendant had voluntarily waived his right to be present during voir dire).

In *Allen*, the Supreme Court held that:

[A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

*Allen*, 397 U.S. at 343. Thus, a judge may remove a disruptive defendant without violating the defendant's constitutional right to be present at trial. *Id*. Once a defendant

has lost his right to be present at trial as a result of misconduct, however, the right to be present can be reclaimed as soon as he is willing to conduct himself with decorum and respect consistent with judicial proceedings. *Id.*

Here, Harrell argues he was constitutionally entitled to be present during these proceedings and the trial judge improperly excluded him. It was not judicial bias that led to Harrell being ejected from the courtroom, however, it was Harrell's own disruptive conduct. As the trial judge stated (and the appellate court noted), Harrell had been disorderly and disrespectful to the court on several occasions during the trial. He was repeatedly warned by the court that his behavior was inappropriate but nevertheless Harrell continued to have outbursts. *See e.g.* Rep.'s Tr. ECF No. 11-18 at 2408, 2411–14, 2417–18. Given his history of poor conduct and repeated disruptions despite warnings, the appellate court reasonably concluded that the trial court's decision to remove him from proceedings did not amount to bias. *See Allen*, 397 U.S. at 343.

Accordingly, the appellate court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 412–13; 28 U.S.C. §2254(d)(1). Nor was it based on an unreasonable determination of the facts based on the evidence presented at trial. *See Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2). Harrell is not entitled to relief.

### k.    Ineffective Assistance of Counsel for Failure to Object

In both is Petition and Traverse, Harrell argues defense counsel was ineffective in failing to object. *See* Pet., ECF No. 1 at 29; Traverse, ECF No. 17 at 18, 24–25. To the extent Harrell argues that defense counsel's failure to object on judicial misconduct grounds to the above purported errors amounted to ineffective assistance of counsel, his claim fails. The appellate court denied the claim, stating:

> Harrell contends his trial counsel was ineffective to the extent he failed to object to the asserted . . . judicial misconduct. We reject this claim. As previously noted, most of the objections trial counsel did not assert would have been meritless. (*People v. Kipp* (1998) 18 Cal.4th 349, 377 ["[F]ailure to assert a meritless defense does not demonstrate ineffective

1
2
3
4

assistance of counsel."].) As further noted, it is not reasonably probable the outcome of the proceeding would have differed had trial counsel asserted the remainder of the objections Harrell has identified. (*People v. Caro* (2019) 7 Cal.5th 463, 514–515.)

5   Cal. Ct. App. Opinion, ECF No. 11-28 at 35–36.

6   For the reasons discussed above, Harrell has failed to show the trial court

7   committed misconduct in violation of the due process clause. He cannot establish

8   deficient performance by defense counsel or prejudice because the claims lacked merit

9   and any objection would have been futile. *See Rupe*, 93 F.3d at 1445 ("[T]he failure to

10  take a futile action can never be deficient performance."). Therefore, Harrell has cannot

11  satisfy the cause and prejudice exception to the procedural default doctrine based on

12  counsel's failure to object. Moreover, the state court's denial of the claim was neither

13  contrary to, nor an unreasonable application of *Strickland*.; *Williams*, 529 U.S. at 412–

14  13; 28 U.S.C. §2254(d)(1). And the decision was not based on an unreasonable

15  determination of the facts based on the evidence presented to the state court. *See Miller-*

16  *El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2). Harrell is therefore not entitled to relief.

17                    3.    Conclusion

18  For the reasons discussed above, Harrell's judicial misconduct claims are

19  procedurally defaulted. Harrell has failed to establish cause and prejudice to overcome

20  the procedural default because even if counsel had objected on judicial bias grounds, his

21  objection would have been sustained. *See Loveland*, 231 F.3d at 644. Nor can Harrell

22  establish a fundamental miscarriage of justice because he has not shown that "a

23  constitutional violation has probably resulted in the conviction of one who is actually

24  innocent." *See Schlup*, 513 U.S. at 327. Even assuming Petitioner could overcome the

25  default, the judicial bias claims fail on the merits—both individually and cumulatively.

26  The state court's rejection of Harrell's judicial bias claims were neither contrary to, nor

27  an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at

28  412–13; 28 U.S.C. §2254(d)(1). In addition, the court's decision was not based on an

unreasonable determination of the facts presented at trial. *See Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2). Claim six is denied.

### G.    Cumulative Error

Finally, Harrell argues his due process rights were violated by the cumulation of the errors alleged in the Petition. *See* Pet., ECF No. 1 at 34–35. He raised this claim in the California Supreme Court and it was denied without comment. *See* Cal. Sup. Ct. Docket, ECF No. 11-33. In the last reasoned state court opinion to address the matter, that appellate court denied the claim, stating:

> Harrell claims the cumulative effect of the assigned errors in his trial rendered the trial fundamentally unfair. "We have rejected nearly all of defendant's assignments of error, and when we have determined that the trial court erred, we have concluded that the error did not result in prejudice to defendant. Even considered collectively, the errors were not significant." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1382.) On these grounds, we conclude Harrell was not denied his right to a fair trial.

Cal. Ct. App. Opinion, ECF No. 11-32 at 36.

As discussed above, under the cumulative error doctrine, the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even if each error considered individually would not warrant relief. *See Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007) (characterizing this principle as clearly established by the Supreme Court). For the reasons discussed above, the Court concludes that no error of constitutional magnitude occurred. As such, the state court's determination was not unreasonable or contrary to clearly established federal law. *See Rupe*, 93 F.3d at 1445 (9th Cir. 1996) (rejecting cumulative error claim where court found no constitutional errors); *Williams*, 529 U.S. at 407–08. In addition, Harrell has not shown the state court's decision was based on an unreasonable determination of the facts presented at trial. *See Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2). Therefore, claim seven is denied.

/ / /

### H.    Sua Sponte Instruction on Lesser Included Offense

In his Traverse, Petitioner argues his due process rights were violated when the trial court improperly instructed the jury sua sponte on the lesser-included offense of attempted voluntary manslaughter. *See* Traverse, ECF No. 17 at 17, 23–24. He also contends defense counsel was ineffective in failing to object to the instruction. *Id.* Harrell raises these claims for the first time in his Traverse. District courts ordinarily will not consider claims raised for the first time in a Traverse. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief."). And here, because Harrell did not present these claims to the state supreme court (*see* ECF No. 11-32), they are unexhausted. 28 U.S.C. § 2254(b), (c); *Granberry v. Greer*, 481 U.S. 129, 133–34 (1987) (stating habeas petitioners who wish to challenge either their state court conviction or the length of their confinement in state prison, must first exhaust state judicial remedies). The Court therefore declines to exercise its discretion to address these new and unexhausted claims. *Breverman v. Terhune*, 153 F. App'x 413, 414 (9th Cir. 2005) (concluding a district court "has discretion, but is not required," to address claims raised for the first time in a traverse) (citing *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) and *Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002)); *Jackson v. Roe*, 425 F.3d 654, 662, 655 n.1 (9th Cir. 2005). Harrell is not entitled to relief as to this claim.[10]

---

[10] The Court notes that even if Harrell had raised the claim in the state courts, there is no clearly established federal law which "prohibits a trial court from instructing a jury with a factually inapplicable but accurate statement of state law." *Fernandez v. Montgomery*, 182 F. Supp. 3d 991, 1011 (N.D. Cal. 2016); *see also Steele v. Holland*, 2017 WL 2021364, *8 (N.D. Cal. 2017) ("Petitioner does not cite, and the Court is not aware of any clearly established law that constitutionally prohibits a trial court from instructing a jury with a factually inapplicable but accurate statement of state law."); *Martinez v. Hollond,* 2015 WL 10044281, *18 (C.D. Cal. 2015) (Giving "'an instruction which is not supported by the evidence is not a due process violation.'" (citation omitted)), report and recommendation accepted by, 2016 WL 552679 (C.D. Cal. 2016); *cf. Griffin v. United States*, 502 U.S. 46, 59-60 (1991) (concluding it does not violate due process to instruct a

## VI.   REQUEST FOR EVIDENTIARY HEARING

In his Traverse, Petitioner requests an evidentiary hearing to "resolve" the claims raised in the Petition. Traverse, ECF No. 17 at 10. Petitioner does not, however, identify what evidence, if any, he intends to present. In any event, Petitioner's request is foreclosed by the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011). There, the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review under 28 U.S.C.§ 2254(d)(1) —whether the state court determination was contrary to or an unreasonable application of established federal law—must be confined to the record that was before the state court. *Pinholster*, 563 U.S. at 181–82. The *Pinholster* Court specifically found that the district court should not have held an evidentiary hearing regarding Pinholster's claims until after the Court determined that the petition survived review under section 2254(d)(1). *Id.*; *see also Gonzalez v. Wong*, 667 F.3d 965, 979 (9th Cir. 2011). Here, for the reasons discussed above, none of Petitioner's claims survive review under section 2254(d). The Ninth Circuit has stated that "an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief." *Sully v. Ayers*, 725 F.3d 1057, 1075–76 (9th Cir. 2013).  Accordingly, Harrell's request for an evidentiary hearing is **DENIED.**

## VII.   CERTIFICATE OF APPEALABILITY

Under AEDPA, a state prisoner seeking to appeal a district court's denial of a habeas petition must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A).  The district court may issue a certificate of appealability if the petitioner has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To

---

jury on a legal theory that lacks evidentiary support "since jurors are well equipped to analyze the evidence"); *Sochor v. Florida*, 504 U.S. 527, 538 (1992) (stating that *Griffin* "held it was no violation of due process that a trial court instructed a jury on two different legal theories, one supported by the evidence, the other not" since a jury is "likely to disregard an option simply unsupported by evidence.").

satisfy this standard, a petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a). The Ninth Circuit has noted that the standard for granting a certificate of appealability is "relatively low." *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002). A petitioner "need not show that he should prevail on the merits," *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000), but may be entitled to a certificate when the "questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983) (superseded on other grounds by 28 U.S.C. § 2253(c)(2)). The Court finds Harrell has failed to make "a substantial showing of the denial of a constitutional right," and reasonable jurists would not find debatable this Court's assessment of his claims. *See Slack*, 529 U.S. at 484. Accordingly, a certificate of appealability **DENIED**.

## VIII. CONCLUSION

Based on the foregoing, the Court **DENIES** the petition for writ of habeas corpus, **DENIES** Petitioner's request for an evidentiary hearing and **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

DATED: April 29, 2022

Hon. Ruth Bermudez Montenegro
United States District Judge

3:21-cv-0255-RBM-AHG